**Case No. 21-35473**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CASEY CLARKSON,
*Plaintiff-Appellant,*

v.

ALASKA AIRLINES, INC.; HORIZON AIR INDUSTRIES, INC.,
*Defendants-Appellees.*

*Appeal from the United States District Court for the Eastern District of Washington (Spokane),
Case No. 2:19-cv-00005-TOR · Honorable Thomas O. Rice, District Judge*

# RESPONSE BRIEF OF DEFENDANTS-APPELLEES

TRISTAN MORALES
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
tmorales@omm.com

ANTON METLITSKY
MARK W. ROBERTSON
CHARLES MAHONEY
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
ametlitsky@omm.com
mrobertson@omm.com
cmahoney@omm.com

JASON ZARROW
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
jzarrow@omm.com

*Attorneys for Defendants-Appellees Alaska Airlines, Inc. and Horizon Air Industries, Inc.*

 

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Alaska Airlines, Inc. is a wholly owned subsidiary of Alaska Air Group, Inc., a publicly-held corporation.  No other publicly-held corporation has an ownership of 10% or more of its stock.

Horizon Air Industries, Inc. is a wholly owned subsidiary of Alaska Air Group, Inc., a publicly-held corporation.  No other publicly-held corporation has an ownership of 10% or more of its stock.

Dated:  June 13, 2022

/s/ Anton Metlitsky
Anton Metlitsky

# TABLE OF CONTENTS

**Page(s)**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT .......................................i

INTRODUCTION ........................................................................................ 1

STATEMENT OF JURISDICTION .............................................................. 6

STATEMENT OF THE ISSUES ................................................................... 6

STATEMENT OF THE CASE ...................................................................... 6

    A.    Statutory Background And History .................................................. 6

    B.    Factual And Procedural Background .................................................. 9

        1.    Pilots Have Significant Control Over Their Airline And Military Schedules ................................................................ 10

        2.    Pilots Take A Significant Amount Of Military Leave ............ 11

        3.    Plaintiff's Claim ................................................................... 13

        4.    The District Court's Summary Judgment Decision ................. 15

SUMMARY OF THE ARGUMENT .......................................................... 16

STANDARD OF REVIEW ........................................................................ 21

ARGUMENT ............................................................................................. 23

I.    THE DISTRICT COURT CORRECTLY HELD THAT MILITARY LEAVE FOR PILOTS AT ALASKA AND HORIZON IS NOT COMPARABLE TO JURY DUTY LEAVE, SICK LEAVE, OR BEREAVEMENT ................................................................................. 23

    A.    The District Court Correctly Held That Military Leave Is Not Comparable To The Comparator Leaves In Duration And Frequency ...................................................................................... 25

        1.    Military Leave Is Not Comparable In Duration, And Plaintiff's Objections To The District Court's Approach Are Baseless ......................................................................... 25

        2.    Military Leave Is Not Comparable In Frequency ................... 31

    B.    The District Court Correctly Held That The Purpose Of Pilot Military Leave Is To Perform A Parallel Career, Unlike With Jury Duty Leave, Sick Leave, And Bereavement ............................. 37

# TABLE OF CONTENTS
## (continued)

**Page(s)**

C.    The District Court Correctly Held That Pilots Have Far More Control Over The Timing Of Military Leave Than Over Other Leaves ...............................................................................39

      1.    Pilots Have Substantial Control Over The Timing Of Military Leave But Not Over The Timing Of The Comparator Leaves ...................................................39

      2.    Plaintiff's Contrary Arguments Are Legally And Factually Mistaken ..................................................41

II.    "PAY DURING LEAVE" IS NOT A BENEFIT UNDER THE CBAS .....44

   A.    The CBAs Do Not Provide "Pay During Leave" As A Benefit ........44

      1.    Under The CBAs, "Pay During Leave" Is A Component Part Of A Benefit, Not A Standalone Benefit.........................45

      2.    Defendants' CBAs Are Consistent With USERRA's Definition Of Benefits.............................................48

      3.    Plaintiff's Interpretation Is Inconsistent With The Federal Government's Interpretation Of USERRA .............................50

   B.    Plaintiff's Claim Is Precluded By The RLA To The Extent He Interprets Defendants' CBAs Differently ..........................................53

CONCLUSION ....................................................................................................55

CERTIFICATE OF COMPLIANCE......................................................................56

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska Airlines Inc. v. Schurke*,
   898 F.3d 904 (9th Cir. 2018) ................................................................ 44, 54

*Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*,
   280 F.3d 901 (9th Cir. 2002) .................................................................54

*Bates v. United States*,
   52 U.S. 23 (1997) ..................................................................................27

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) .................................................................29

*Crews v. City of Mt. Vernon*,
   567 F.3d 860 (7th Cir. 2009) .............................................................. 7, 40

*Elgin, Joliet & E. Ry. Co. v. Burley*,
   325 U.S. 711 (1945) ..............................................................................54

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021) ..........................................................................32

*Hoefert v. Am. Airlines, Inc.*,
   438 F. Supp. 3d 724 (N.D. Tex. 2020) ............................................ 15, 22, 39

*Huntsman v. Sw. Airlines Co.*,
   2021 WL 391300 (N.D. Cal. 2021) .......................................................41

*Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Alaska Airlines, Inc.*,
   813 F.2d 1038 (9th Cir. 1987) ...............................................................54

*Luna v. Hansen & Adkins Auto Transp., Inc.*,
   956 F.3d 1151 (9th Cir. 2020) ...............................................................21

*Macon Cnty. Samaritan Mem. Hosp. v. Shalala*,
   7 F.3d 762 (8th Cir. 1993) .....................................................................32

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Marx v. Gen. Rev. Corp.*,
  568 U.S. 371 (2013) ..........................................................33

*Merck Sharp & Dohme Corp. v. Albrecht*,
  139 S. Ct. 1668 (2019) ......................................................22

*Monroe v. Standard Oil Co.*,
  452 U.S. 549 (1981) ..........................................................40

*Moss v. United Airlines, Inc.*,
  20 F.4th 375 (7th Cir. 2021)......................................... 15, 39

*Moss v. United Airlines, Inc.*,
  420 F. Supp. 3d 768 (N.D. Ill. 2019)....................... 15, 22, 39

*Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc.*,
  281 F.3d 733 (8th Cir. 2002)...............................................32

*Polich v. Burlington N., Inc.*,
  942 F.2d 1467 (9th Cir. 1991)..............................................54

*Rogers v. City of San Antonio*,
  392 F.3d 758 (5th Cir. 2004)........................................ 23, 48

*Stissi v. Interstate & Ocean Transp. Co. of Philadelphia*,
  765 F.2d 370 (2d Cir. 1985) ................................................22

*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
  17 F.4th 950 (9th Cir. 2021)................................................44

*Synoracki v. Alaska Airlines, Inc.*,
  2022 WL 1746777 (W.D. Wash. May 31, 2022)........................ 15, 22

*Tice v. Am. Airlines, Inc.*,
  288 F.3d 313 (7th Cir. 2002)................................... 44, 53, 54

*Travers v. Federal Exp. Corp.*,
  8 F.4th 198 (3d Cir. 2021)...................................................45

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Tully v. Dep't of Just.*,
    481 F.3d 1367 (Fed. Cir. 2007) ............................................................. 7, 17, 24

*United States v. Stokley*,
    881 F.2d 114 (4th Cir. 1989) ..................................................................... 32

*Waltermyer v. Aluminum Co. of America*,
    804 F.2d 821 (3d Cir. 1986) ............................................................... passim

*White v. United Airlines*,
    987 F.3d 616 (7th Cir. 2021) .............................................................. passim

*Wooden v. United States*,
    142 S. Ct. 1063 (2022) .............................................................................. 38

## Statutes

5 U.S.C. § 6307 ............................................................................................. 52

5 U.S.C. § 6322 ............................................................................................. 52

5 U.S.C. § 6323 ....................................................................................... 52, 53

5 U.S.C. § 6326 ............................................................................................. 52

28 U.S.C. § 1866 ........................................................................................... 33

38 U.S.C. § 4301 .......................................................................................... 1, 6

38 U.S.C. § 4303 ..................................................................................... passim

38 U.S.C. § 4312 ........................................................................................... 33

38 U.S.C. § 4316 ..................................................................................... passim

38 U.S.C. § 4323 ........................................................................................... 53

38 U.S.C. § 4334 ........................................................................................... 52

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**Regulations**

20 C.F.R. § 1002.7 ........................................................................ 50, 51

20 C.F.R. § 1002.150 ...................................................................... passim

**Other Authorities**

70 Fed. Reg. 75,246 (Dec. 19, 2005) .............................................. 42, 51

H.R. Rep. No. 103-65(I) (1994) ......................................................... 8, 38

Kathryn Piscitelli & Edward Still, *The USERRA Manual: Uniform Services Employment & Reemployment Rights* § 3:3 (2021) ..............................................43

Second Am. Compl., *Woodall v. Am. Airlines, Inc.*, 3:06-cv-0072-M (N.D. Tex.), ECF No. 14 .................................................... 48, 53

U.S. Bureau of Labor Statistics, Department of Labor, BLS Reports on Employee Benefits in Medium and Large Private Establishments, 1995 (July 25, 1997) https://www.bls.gov/news.release/history/ebs3_020398.txt ................................51

U.S. Bureau of Labor Statistics, Department of Labor, BLS Reports on Employee Benefits in Small Private Industry Establishments, 1994 (Sept. 14, 1995) https://www.bls.gov/news.release/history/ebs_091495.txt ..................................51

U.S. Bureau of Labor Statistics, Department of Labor, BLS Reports on Employee Benefits in State and Local Governments, 1994 (Sept. 14, 1995) ......................51

U.S. Bureau of Labor Statistics, Department of Labor, Employer Costs for Employee Compensation – December 2021 (Table 1) (Mar. 18, 2022) .......................................................50

vii

## INTRODUCTION

Plaintiff Casey Clarkson is a former pilot at Defendant Horizon Air Industries, Inc. and a current pilot at Defendant Alaska Airlines, Inc. For much of his employment with these airlines, he also had (by his own description) a "parallel career." He was a reservist with the Washington Air National Guard and spent 10-12 days per month performing service. That amount of service is not unusual for pilots, and much of their service is performed while on military leave. On average, servicemember pilots at Alaska took 511 days of military leave during the class period at issue in this case. Plaintiff, and the other class members, were paid by the federal government for their service. But he now contends that the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*—and in particular Section 4316(b)—requires Defendants also to pay for his service and subsidize his "parallel career" because they provided paid jury duty leave, paid sick leave, and paid bereavement.

No plausible reading of USERRA supports that result, as the district court correctly held. The point of Section 4316(b) is to ensure that employers do not discriminate in the provision of non-seniority benefits—if an employer provides a non-seniority benefit to employees on non-military leave, the employer must provide that same benefit during *comparable* military leaves. But pilots' military leave is not comparable to jury duty, sick, and bereavement leave. An Alaska

pilot's military leave is, on average, more than three times as long as an average jury duty, sick, or bereavement leave. Moreover, pilots typically take many military leaves each year, whereas (for example) a jury duty leave happens at most once every few years (or, in plaintiff's case, never)—Alaska pilots who took military leave did so an average of 47 times over the class period, whereas pilots who took jury duty leave did so an average of only two times during the same period. And considering the duration of individual military leaves together with their frequency shows that the amount of military leave pilots take compared to jury duty, sick, and bereavement leave is not even in the same ballpark—pilots spend orders of magnitude more time on military leaves than jury duty, sick, or bereavement leave. That is why plaintiff quite appropriately described military service as a "parallel career," and that second career is facilitated by military leave.

Section 4316(b) requires employers to treat like cases alike. But pilots' military leave at Alaska and Horizon is not like the other leaves on which plaintiff relies. And Section 4316(b) simply does not require treating *different* cases alike. Certainly, it does not require employers who provide pay on discrete, rare leaves like jury duty to subsidize their employees second careers by paying them to work more than a month every year for a different employer. Yet that is plaintiff's theory in this case, and it should be rejected.

These principles are reflected in the main regulation at issue here: 20 C.F.R. § 1002.150(b), which is the Department of Labor regulation that implements Section 4316(b). That regulation sets forth several non-exclusive factors that courts can consider in the comparability analysis—the duration of the leave, its purpose, and an employee's flexibility in when to take it. But those illustrative factors are ultimately just guides—the basic question courts must answer is whether military leave and a comparator leave are sufficiently similar such that an employer who treats them differently can be said to have engaged in unlawful discrimination. For the reasons explained, the district court properly applied that regulation to conclude that plaintiff's USERRA claim fails as a matter of law.

Plaintiff's main argument on appeal is that the district court improperly applied the "duration" factor under § 1002.150(b). He argues that the district court misapplied this factor because it considered the duration of all military leaves rather than just the category of "short-term military leave," which plaintiff defines as military leaves of 30 days or shorter. But categorizing military leaves in that manner has no basis in law or fact—"short-term military leave" is just a made-up category that plaintiff gerrymandered in an attempt to help him win this case.

Plaintiff's main argument also misses the forest for the trees. Plaintiff's narrow focus on the duration of each individual instance of military leave ignores that military leave is taken with *far* greater frequency than comparator leaves.

3

Considering those factors together, which shows the total time pilots spent on various leaves, emphatically demonstrates that military leaves are apples while the comparator leaves are oranges. A one-day leave that occurs once per year is self-evidently quite different than a one-day leave that occurs twice per week, and there is no reason to expect or require employers to treat them as though they were the same. And when duration and frequency are considered together, there really is nothing to this case—again, a leave that pilots take on average 511 days over the class period simply is not comparable to a leave that pilots take on average six days over the same period.

Plaintiff attempts to evade this fundamental problem by complaining that frequency is not a factor specifically mentioned in DOL's comparability regulation. But the regulation's plain language indicates that the comparability factors it identified are non-exhaustive. And both precedent and common sense makes clear that frequency is relevant in a case like this one.

Plaintiff also contends that the district court's consideration of frequency would render USERRA a dead letter, because under it, no leave would ever be comparable to military leave. That is obviously not true. A service member's short, once-a-year training may well be found comparable to (for example) jury duty, which is what happened in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986). But plaintiff did not limit his claim to infrequent leaves—

he lumped together *all* military leaves, no matter how regularly they recur, so long as they last less than thirty days.  Plaintiff's complaint is thus the direct consequence of his litigation tactics, not the district court's application of USERRA.  And because Defendants' pilots take military leave much more frequently than most other workers, the district court's decision is unlikely to apply beyond this particular case (setting aside plaintiff's litigation tactics).

That is all the Court needs to decide, but there is a further, threshold defect with plaintiff's position.  Section 4316(b) requires employers to provide employees on military with the same non-seniority "benefits" they provide employees on comparable non-military leaves.  Plaintiff says the relevant benefit is "pay during leave."  But the "benefits" USERRA protects are those set by an "employment contract or agreement," 38 U.S.C. § 4303(2)—here, Defendants' CBAs.  And Defendants' CBAs do not provide the benefit of "pay during leave."  Pay during leave is just a component of a separate, whole benefit—e.g., paid sick leave or paid jury duty leave—but it is not itself a "benefit" under the CBAs, as plaintiff recognized below.  And that is fatal to plaintiff's claim because he does not suggest that USERRA required Defendants to provide sick leave, jury duty leave, or bereavement leave during his military leave.  To the extent plaintiff disagrees with this interpretation of the CBAs, his claim would be a "minor dispute" preempted

by the Railway Labor Act ("RLA") and would need to be adjudicated by the relevant system board of adjustment.

For these reasons, and as explained below, this Court should affirm.

## STATEMENT OF JURISDICTION

Plaintiff's jurisdictional statement is correct, *see* Appellant's Opening Brief ("AOB") 5, except that the district court lacks subject matter jurisdiction under the RLA to the extent plaintiff's position requires construction of Defendants' CBAs, *infra* Part II.B.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly concluded that, for pilots at Alaska and Horizon, military leave is not comparable to jury duty leave, sick leave, or bereavement.

2. Whether "pay during leave" is a benefit Defendants provide during non-military leaves.

## STATEMENT OF THE CASE

### A.   Statutory Background And History

1. Congress enacted USERRA in 1994 to encourage non-career military service and "to prohibit discrimination against persons because of their service." 38 U.S.C. § 4301(a)(3).  Section 4316(b) prohibits discrimination in the provision of non-seniority benefits.  Under that provision, an employee absent for military service is entitled to such non-seniority benefits "as are generally provided by the

6

employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan." 38 U.S.C. § 4316(b). Because that provision prevents discrimination, the DOL has made clear that the critical question is "comparability": an employer discriminates against military service if it generally provides a non-seniority benefit to employees on non-military leave but not to servicemembers on "comparable" military leaves. 20 C.F.R. § 1002.150(b). "In order to determine whether any two types of leave are comparable," DOL explains, "the duration of the leave may be the most significant factor to compare." *Id*. "[O]ther factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." *Id*. The regulation does not, however, exhaustively identify all factors relevant to this inquiry. Nor could it, since comparability depends on the specific context of each particular case. At its core, the purpose of the analysis is to compare the "character of the … [different] forms of leave." *Tully v. Dep't of Just.*, 481 F.3d 1367, 1371 (Fed. Cir. 2007).

2. In enacting USERRA, Congress did not write on a blank slate. "USERRA is the latest in a series of veterans' employment rights laws, replacing its most immediate predecessor, the Veterans' Reemployment Rights Act ('VRRA') of 1974." *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009). One particularly important decision under the VRRA was the Third

7

Circuit's decision in *Waltermyer*. The question there was "whether a National Guardsmen is entitled to" "holiday pay" during his "annual two-week military training period." *Waltermyer*, 804 F.2d at 821-22. "The [defendant's] collective bargaining agreement limited eligibility for holiday pay to individuals who worked during that week, but exempted from that requirement persons" absent for jury duty or "because of defined illness or layoff." *Id.* at 822, 825. *Waltermyer* held that USERRA's predecessor statute required the employer provide the guardsman with holiday pay when his inability to satisfy the employer's work requirement was due to military leave. In other words, *Waltermyer* held that if an employer offers a particular non-seniority benefit—there, holiday pay—to employees during a non-military leave that is comparable to military leave, it must provide that same benefit to reservists during military leave. In enacting § 4316(b), Congress meant to affirm *Waltermyer*'s most-favored-treatment rule: "to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would be accorded the military leave." H.R. Rep. No. 103-65(I), at 34 (1994).

Equally crucial, though, *Waltermyer* did not hold that jury duty or sick leave are comparable to military leave at all employers in all circumstances. And *Waltermyer* expressly declined to adopt the rule that an employer who pays employees during jury duty must also pay employees on military leave. Indeed,

8

the *Waltermyer* majority recognized that employees absent for jury duty were entitled under company policy "to their regular wages in addition to juror fees," but it also made clear "that work during a holiday week [must] be seen only as establishing eligibility for holiday pay, not compensation for the other days not worked." 804 F.2d at 825. The court thus expressly "limit[ed its] holding to the claim to holiday pay presented," *id.*, and did not conclude that because the defendant provided paid jury duty leave it must also provide paid military leave.

## B. Factual And Procedural Background

Plaintiff was a pilot at Horizon and is now a pilot at Alaska. From at least November 2013 until June 2018, plaintiff maintained a parallel career in the Washington Air National Guard, consisting of about 10-12 days of military service work per month. SER-67, SER-71. That is typical for pilots who, as compared to non-pilots, perform significantly more military service work to maintain flying currency and proficiency. *See* SER-120-22; SER-80 ("the requirements for the pilots in my squadron were greater than the requirements for an enlisted member"); *see also* SER-182, SER-186 (overwhelming majority of military leaves of thirty days or fewer at Alaska and Horizon in 2018 were taken by pilots). Like all members of the military, plaintiff was compensated by the government for his service, often in amounts that matched or exceeded what he was paid by his airline employer. *See* SER-69-70; SER-72.

9

1. *Pilots Have Significant Control Over Their Airline And Military Schedules*

Airline pilots are uniquely situated to maintain what plaintiff described as a "parallel career" in the military. SER-71. Unlike most American workers, airline pilots work only about half the month, have control over their work schedules, and do not work Monday-Friday shifts. SER-122-23; SER-159; 4-ER-607, 4-ER-609; 5-ER-959.[1] At Alaska and Horizon, pilots bid in advance for their monthly schedule using a scheduling system that accounts for each pilot's preferences, as well as their known service dates. *See* 4-ER-626-27; 5-ER-925-26; *see also* SER-63-64; SER-75-77. They can also adjust their work schedule once it is set by the system by trading trips with other pilots, or by dropping or picking up trips from "open time." *See, e.g.*, SER-84; SER-122-23; 4-ER-630-36; 5-ER-935-37.

At the same time, military reserve pilots have "tremendous" flexibility in scheduling their military work. SER-79-81. That is because their work consists of proficiency flying, and proficiency flying can be scheduled with different military units on different dates. *See id.* Captain Ronald Limes, Alaska's Base Chief Pilot explained it best: "if there was a training flight that had a conflict in my own squadron, Squadron A, I could go to Squadron B and they would do the same event

---

[1] Defendants cite the most recent Alaska and Horizon CBAs. There have been no material changes to the CBAs relevant to this case over the class period.

on a different day and I could … accomplish the same thing. … That is very common." SER-79.

Pilots can also rearrange their military duty periods based on their scheduling preferences to avoid (or create) conflicts with civilian flying. *See* SER-67-68; SER-80-83. For example, plaintiff testified that, in a typical month, he "would negotiate with [his] schedulers" about any conflicts between his airline schedule and service dates—including whether he was "going to have to take leave" or could "move dates around" to avoid any conflict. SER-67-68. Perhaps the most pointed evidence comes from Captain James Meldrum, an Alaska pilot who served as the chair of the union negotiating committee for the current Alaska CBA. Captain Meldrum refused to sign a declaration written by plaintiff's counsel because it was inaccurate: next to the sentence stating, "[e]ven if a pilot volunteers for military duty it is the military, not the pilot, who dictates the time and duration of that leave," Captain Meldrum wrote "do not agree." SER-158.

### 2. *Pilots Take A Significant Amount Of Military Leave*

Pilots take a significant amount of military leave, much more than any of the types of non-military leave that plaintiff alleges are comparable. The full data for pilots who take each leave are reproduced in a chart below,[2] but take the

---

[2] The data in the chart are located at, or derived from, the record at SER-113, SER-119, and 5-ER-1001-02.

comparison of military leave to jury duty as an example. An individual military leave at Alaska over the class period averaged just under 11 days, compared to just under 3 days of jury duty. Alaska pilot reservists took just under 6 military leaves per year and 47 military leaves over the class period, compared to one instance of jury every several years and 2 instances over the entire class period for pilots who took jury duty leave. The average number of days of military leaves taken every year was just over one month, compared to less than half a day of jury duty per year on average. And the total number of military leave days over the class period was 511, compared to just six for jury duty.

| ALASKA AIRLINES | | | | | |
|---|---|---|---|---|---|
| | October 2004 - December 2020 | | | September 2013 - December 2020 | |
| | Military | Jury Duty | Bereavement | Sick Leave | Military |
| Average Duration/Length (days) | 10.9 | 2.9 | 2.8 | 2.5 | 8.4 |
| Average Number of Leaves per Year | 5.8 | 0.2 | 0.5 | 2.9 | 6.4 |
| Average Number of Leaves Across the Entire Period | 47 | 2 | 4 | 16 | 30 |
| Average Number of Days of Leave per Year | 31.4 | 0.4 | 0.7 | 5.6 | 34.5 |
| Average Number of Days of Leave Across the Entire | 511 | 6 | 12 | 41 | 253 |

| Time Period | | | | | |
|---|---|---|---|---|---|
| **HORIZON AIR** | | | | | |
| | October 2008 - December 2020 | | | February 2010 - December 2020 | |
| | Military | Jury Duty | Bereavement | Sick Leave | Military |
| Average Duration/Length (days) | 34.1 | 2.7 | 2.5 | 2.2 | 20.7 |
| Average Number of Leaves per Year | 5.1 | .3 | .3 | 3.2 | 5.2 |
| Average Number of Leaves Across the Entire Period | 17 | 2 | 2 | 15 | 17 |
| Average Number of Days of Leave per Year | 45.7 | 0.3 | 0.3 | 3 | 32.9 |
| Average Number of Days of Leave Across the Entire Time Period | 560 | 4 | 4 | 33 | 359 |

3.   *Plaintiff's Claim*

Plaintiff alleges that, although he was paid by the military for his service,

USERRA also requires Defendants to provide paid military leave because they

13

provide paid jury duty leave, paid sick leave, and paid bereavement.[3]  These

benefits are set by CBAs negotiated under the RLA by the Air Lines Pilot

Association at Alaska and the International Brotherhood of Teamsters at Horizon.

*See, e.g.*, 4-ER-559, 5-ER-903.

Alaska's CBA includes various paid-leave benefits.  Pilots receive the

benefit of paid sick leave.  *See, e.g.*, 4-ER-618.  In the event of jury duty that

actually conflicts with a pilot's schedule at Alaska, pilots receive a paid jury duty

absence if they promptly notify Alaska upon receipt of summons and provide

supporting paperwork designating the days served as a juror.  *See, e.g.*, 4-ER-651-

52.  And pilots "may" be granted up to seven days of bereavement absence in the

event of death, serious illness or injury of a member of a pilot's family, but these

days are only paid if the pilot uses sick leave.  *See, e.g.*, 4-ER-613.  The chief pilot

or a base chief pilot can permit a pilot to take a longer bereavement absence in

their discretion.  *See id.*; *see also* SER-59.

The Horizon CBA provides for three days of paid bereavement leave if the

leave is approved by the Chief Pilot.  5-ER-956.  The Horizon CBA also provides

---

[3] Plaintiff argues on appeal that vacation is also comparable to military leave, but he did not allege that taking a vacation—which is obviously nothing like military leave—is a comparator leave in his complaint.  *See* 5-ER-1053-88.  The district court also did not meaningfully address it in the comparability analysis.  *See* 1-ER-22-25.  So Defendants do not address it in substance here.

paid sick leave. 5-ER-945. Finally, the Horizon CBA provides for paid jury duty leave, but pilots must pay Horizon back for the jury duty stipend. 5-ER-956-57.

Plaintiff claims that USERRA requires all military leaves at Alaska and Horizon that are 30 days or shorter—what he calls "short-term military leave"—to be paid. The district court certified a class of Alaska or Horizon pilots who took "short-term military leave from October 10, 2004 through the date of judgment." SER-177. The court limited the class to pilots because pilots' claims are not typical of other work groups. SER-172-73.

### 4. *The District Court's Summary Judgment Decision*

On May 24, 2021, the district court granted Defendants' motion for summary judgment, joining other courts in rejecting similar claims brought by pilots. *See Synoracki v. Alaska Airlines, Inc.*, 2022 WL 1746777 (W.D. Wash. May 31, 2022); *Hoefert v. Am. Airlines, Inc.*, 438 F. Supp. 3d 724 (N.D. Tex. 2020); *Moss v. United Airlines, Inc.*, 420 F. Supp. 3d 768 (N.D. Ill. 2019), *aff'd* 20 F.4th 375 (7th Cir. 2021).

Duration and Frequency. The district court held that military leave for pilots at Defendants was not comparable in duration to jury duty leave, sick leave, or bereavement, especially when frequency was considered. *See* 1-ER-16-18.

Purpose. The district court credited plaintiff's testimony that "pilots who serve as reservists in the military do so to fulfill a 'parallel career.'" 1-ER-19.

Because "[t]he same cannot be said of the other forms of leave provided in the CBAs," the court held that military leave was not comparable in purpose. 1-ER-21.

Control Over Timing. The district court recognized that pilots have significant control over their civilian flight schedules and "their military duty schedules." 1-ER-23. By contrast, pilots have less control over the timing of jury duty, illness, or bereavement. 1-ER-23-24. Thus, the district court concluded, "[b]ecause pilots have a greater degree of control over their ability to take military leave and schedule around such leave, military leave is not comparable to other forms of leave covered by the CBAs." 1-ER-25.

Pay During Leave. Defendants argued in the alternative that the benefit plaintiff seeks—what he calls "pay during leave"—is not a benefit under the CBAs and thus is not required during comparable military leaves under USERRA. The district court did not resolve this argument because it held that plaintiff's comparator leaves were not comparable. 1-ER-11.

## SUMMARY OF THE ARGUMENT

I. Section 4316(b), the USERRA provision at issue here, prohibits discrimination in the provision of non-seniority benefits. Because § 4316(b) is a non-discrimination provision, DOL regulations provide that the critical question is whether military and non-military leaves are "comparable." 20 C.F.R.

§ 1002.150(b). DOL has provided a list of non-exclusive factors to guide courts in their assessment of comparability—i.e., "the duration of the leave," "the purpose of the leave," and "the ability of the employee to choose when to take the leave." *Id*.

Contrary to plaintiff's approach, these factors are not exhaustive—the point of the factors and the more general comparability inquiry is to compare the "character" of a military and non-military leave to determine whether treating them differently amounts to discrimination based on military status. *See Tully*, 481 F.3d at 1371. The district court evaluated these factors wholistically, as the statute and regulation require, and correctly held that military leave for pilots at Alaska and Horizon is not comparable to jury duty leave, sick leave, or bereavement. Because Alaska and Horizon were not treating like leaves differently, they did not violate § 4316(b).

A. 1. The district court correctly held that military leave is not comparable in duration to jury duty leave, sick leave, or bereavement. The average duration of military leave at Alaska and Horizon was roughly 11 and 34 days, respectively. By contrast, the average duration of the comparator leaves was between two and three days at each airline. The average duration of military leave is thus substantially higher than the comparator leaves.

Plaintiff argues that the district court wrongly considered the duration of military leaves as a whole rather than only considering the duration of a category

plaintiff calls "short-term military leave."  But that category was invented by
plaintiff to gerrymander comparability by excluding longer leaves (thus bringing
down the average duration).  That distinction is tethered neither to Section 4316(b)
nor to the Defendants' CBAs, which do not distinguish between 30- and 31-day
leaves.  It is manufactured from whole cloth.  Plaintiff's argument that the district
court erred in analyzing military leave as a category rather than individually also
fails, including because plaintiff is the one who pressed a categorical approach
below and continues to press it here.  Plaintiff's real complaint is not that the
district court viewed military leave as a category when considering duration, but
that it did not adopt plaintiff's baseless, manufactured category.

2.  The disparity in duration is enough to affirm the district court's judgment.
But the picture becomes even clearer when frequency is considered.  Unlike jury
duty leave, sick leave, or bereavement, Alaska and Horizon pilots take military
leave extremely frequently.  Indeed, during the class period, servicemember pilots
at Alaska took an average of 47 military leaves, totaling more than 500 military
leave days.  The figures for non-military leave are off by orders of magnitude—
e.g., two jury duty leaves and six total days of jury duty leave during the entire 16-
year class period.  Providing pay during leaves that are taken a few days every
several years but not during leaves that occur more than a month every year is not
discrimination.

18

The district court did not err in considering frequency alongside duration. The point of a comparability analysis is to compare all relevant characteristics of different leaves. The applicable DOL regulations do not expressly list frequency as a factor, but the factors they do list are by the regulation's plain terms non-exhaustive. And if duration were considered without frequency, obvious differences between pilot military leave and non-military leaves would be obscured—e.g., the fact that pilots took on average more than 500 days of military leave during the class period but only averaged six total days of jury duty leave. Plaintiff is also wrong that the district court's consideration of frequency will "nullify" USERRA because military leave will never be comparable to other leaves. That assertion assumes that all employees take frequent military leaves, but that is wrong—while airline pilots take military leave quite frequently, most employees do not, so frequency will not be a relevant consideration in most cases. But declining to consider frequency when, as here, it is centrally relevant would be legally erroneous.

B. The district court correctly concluded that military leave for pilots serves a different purpose than the comparator leaves. For pilots, military service functions as a parallel career, as plaintiff himself testified. By contrast, no one treats jury duty, illness, or bereavement as a parallel career. Contrary to plaintiff's argument, the district court did not err in crediting plaintiff's testimony that

19

military service for pilots is a "parallel career," or in concluding that the purpose of the leaves was not comparable on that basis.

C. The district court correctly concluded that pilots have far more control over the timing of military leave than they do for jury duty, sick, or bereavement leave. Pilots can control whether and when their civilian and military schedules conflict, and thus whether and when they need to take leave. This control is significant not only because it highlights the dissimilarity between military leave and the comparator leaves, but also because plaintiff's position that pilots should receive double pay for military service would incentivize pilots to create scheduling conflicts whenever possible. The same is not true for jury duty leave, sick leave, or bereavement, because pilots have no control over when they have jury duty, fall ill, or experience the death of a family member. Plaintiff argues that this factor focuses on the voluntariness of the leave, but the regulation clearly states that "the ability of the employee to choose when to take the leave" is what matters. 20 C.F.R. § 1002.150(b).

II. Plaintiff's claim also fails because "pay during leave" is not a benefit under the CBAs.

A. An employer only violates Section 4316(b) if it provides a "benefit" during non-military leave that it does not provide during comparable military leaves. Under USERRA, benefits are determined by the governing CBAs.

Plaintiff says that the benefit he was denied during military leave but received during the comparator leaves is "pay during leave."  But that is not a benefit under the Alaska and Horizon CBAs.  Those CBAs provide whole benefits, like paid sick leave.  What plaintiff calls "pay during leave" is just a component part of these whole benefits, as plaintiff himself recognized below.  Plaintiff's claim thus fails at the threshold.

B.  To the extent plaintiff interprets Defendants' CBAs differently, this court lacks subject matter jurisdiction under the RLA, and the case should be stayed until the CBA dispute can be resolved by the relevant system board of adjustment.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment *de novo*. *See Luna v. Hansen & Adkins Auto Transp., Inc*., 956 F.3d 1151, 1152 (9th Cir. 2020).

Plaintiff argues that comparability under DOL's regulation is a fact question that should ordinarily be submitted to a jury.  Plaintiff is wrong for two reasons.

*First*, plaintiff's premise is incorrect:  whether military leave is comparable to other leaves under Section 4316(b) and its implementing regulations is a question of law for a court, not a fact question for a jury.  Although the comparability analysis can involve limited factual questions (which, in this case, are undisputed), those are "subsumed within an already tightly circumscribed legal

21

analysis" dictated by DOL regulation and, therefore, do not change the legal nature of the ultimate comparability determination. *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1680 (2019). That result makes sense because "judges are better suited than are juries to understand and to interpret agency decisions in light of the governing statutory and regulatory context" and "[d]oing so should produce greater uniformity among courts" (and predictability for employers). *Id.*

*Second*, and in any event, the facts here are undisputed, so the only question is how to apply Section 4316(b) and its implementing regulations to those undisputed facts. And "[t]he application of a statute's terms to undisputed facts … is a question of law." *Stissi v. Interstate & Ocean Transp. Co. of Philadelphia*, 765 F.2d 370, 374 (2d Cir. 1985). Thus, *Waltermyer* resolved the comparability question as a matter of law on an undisputed record. *See* 804 F.2d at 822. And courts have consistently granted summary judgment in USERRA comparability cases involving pilots on similar records, *see Synoracki*, 2022 WL 1746777 at *5-6 (jury duty and sick leave); *Hoefert*, 438 F. Supp. 3d at 738-42 (sick leave, union leave, jury duty, vacation, FMLA leave); *Moss*, 420 F. Supp. 3d at 773-75 (jury

22

duty, union leave, sick leave), because of the unique nature of their CBAs, jobs, and military service.[4]

Either way, the comparability question comes down to whether Defendants are entitled to summary judgment as a matter of law on the undisputed facts. For the reasons explained below, the answer is "yes," as the district court properly held.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT MILITARY LEAVE FOR PILOTS AT ALASKA AND HORIZON IS NOT COMPARABLE TO JURY DUTY LEAVE, SICK LEAVE, OR BEREAVEMENT

Section 4316(b), USERRA's non-seniority-benefit nondiscrimination provision, requires employers to provide employees on military leave the same non-seniority rights and benefits "as are generally provided" to employees on non-military leave. 38 U.S.C. § 4316(b). Because providing different benefits on

---

[4] Plaintiff cites a stray line from *White v. United Airlines*, 987 F.3d 616 (7th Cir. 2021), stating that comparability is "primarily a question of fact." *Id.* at 625. But *White* was decided at the pleadings stage and the court did not engage in a comparability analysis anyway, so this statement is dicta twice over. Plaintiff also cites the Fifth Circuit decision in *Rogers v. City of San Antonio*, 392 F.3d 758 (5th Cir. 2004), which reversed summary judgment because the court found "genuinely disputable issues as to the material facts" relevant to comparability, *id.* at 771-72. But *Rogers* did not hold that any disputed facts must be resolved by a jury. And it certainly did not suggest that summary judgment is improper in a case, like this one, where there are not disputed facts.

civilian and military leaves that are not comparable would not count as discrimination against military service, DOL regulations provide that the critical inquiry is whether military and non-military leaves are "comparable," 20 C.F.R. § 1002.150(b). DOL has provided a list of non-exclusive factors to guide the comparability analysis: "the duration of the leave," which "may be most significant factor to compare," as well as "other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave." *Id.*

The thrust of plaintiff's brief is that courts must treat these factors as exclusive and consider them in isolation. That argument is wrong and defies commonsense. The factors are expressly *non*-exclusive, which is why the regulation uses the words "such as." 20 C.F.R. § 1002.150(b). The purpose of the analysis is to compare the "character" of military leave to non-military forms of leave to determine whether treating them differently could plausibly be considered discrimination against military status. *See, e.g.*, *Tully*, 481 F.3d at 1371. The ultimate question, in other words, is the same as the question at the heart of all discrimination cases: is the employer treating like cases differently? The answer is "no," as the district court correctly concluded.

**A.** **The District Court Correctly Held That Military Leave Is Not Comparable To The Comparator Leaves In Duration And Frequency**

20 C.F.R. § 1002.150(b) provides that "the duration of the leave may be the most significant factor" in determining comparability.[5] The district court properly held that the duration of individual military leaves is not comparable to jury duty, sick, or bereavement leaves. The lack of comparability becomes all the more obvious when the duration of individual leaves is considered alongside the frequency of leaves—considering duration and frequency together, as the district court properly did, definitively shows that plaintiff's contention that pilots' military leave is comparable to jury duty, sick, and bereavement leave is implausible.

    1.    *Military Leave Is Not Comparable In Duration, And Plaintiff's Objections To The District Court's Approach Are Baseless*

    **(a)**    **The district court correctly held that military leave is not comparable in duration**

The average duration of military leave for Alaska pilots during the class period was 10.9 days. *Supra* at 12. At Horizon, that figure was even higher: 34.1 days. *Supra* at 13. By contrast, the average duration of jury duty, sick leave, and

---

[5] Plaintiff argues that duration is always the most significant factor, but that argument conflicts with DOL's use of the words "may be."

bereavement at Alaska and Horizon were all between two and three days. 5-ER-1001-02. That is not comparable. [6]

### (b) The district court correctly rejected plaintiff's effort to gerrymander comparability

These facts are not disputed, and they strongly support the district court's decision. So plaintiff attempts to shift the focus. Instead of taking the average of all military leaves, plaintiff says the district court should have considered only the average of leaves lasting 30 days or less—what plaintiff terms "short-term military leave." The district court correctly rejected plaintiff's attempt to gerrymander the analysis to this made up category, which has no support in fact or law.

Defendants' CBAs do not distinguish between 30- and 31-day leaves. *See* 38 U.S.C. § 4316(b) (relevant comparison is to employee on leave of absence under CBA or other contract or policy). Under the CBAs, a pilot on a 31-day military leave is on the exact same "leave of absence" as a pilot on a 30-day military leave. 4-ER-614; 5-ER-955.

Plaintiff ignores these CBA provisions, citing instead a hodgepodge of irrelevant policies and stray comments in deposition testimony. *See* AOB 38. One is testimony from an Alaska witness that addresses a different type of leave

---

[6] Plaintiff argues that the district court misapplied the summary judgment standard by comparing dissimilar statistics or evaluating statistical tails. AOB 41. The apples-to-apples comparisons here suffice to reject his claim.

altogether—namely, "personal leave." 3-ER-378. But plaintiff does not argue that Defendants provide benefits to pilots on personal leave that they denied to pilots on military leave—he could not make any such argument because personal leave is unpaid. Another is a flight simulator training and currency letter of agreement for pilots on military leave at Alaska—not Horizon—that has not been in effect since 2013. *See* 2-ER-200-06. Still another is testimony from a Horizon witness that Horizon's bidding system distinguishes between short- and long-term military leave, 3-ER-335, who later clarified that the dividing line is six days, not the 30 days that plaintiff posits here, *see* SER-62, SER-53 (distinguishing between "Military Leave 2-5 days," and "Military Leave 6+ days").

Plaintiff's invented category also lacks any legal basis. Neither USERRA nor its implementing regulations distinguishes between "short-term military leave" and other types of military leave for purposes of comparability. 38 U.S.C. § 4316(b)(1)(A); 20 C.F.R. § 1002.150(b). Congress did draw a line between 30- and 31-day absences for other statutory purposes. *See* AOB 37-38. But as the Supreme Court repeatedly "has reiterated: Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 52 U.S. 23, 29-30 (1997)

(quotations and alteration omitted). Plaintiff offers nothing to overcome this presumption.

It is easy to see why plaintiff wants this Court to consider only military leaves that last 30 days or shorter. For one thing, by excluding leaves lasting 31 days or more, plaintiff is able to artificially reduce the average military leave to something approximating the average duration of jury duty leave, sick leave, and bereavement. In other words, he wants to gerrymander comparability. Plaintiff's duration argument falls apart if *all* military leaves are considered because the average duration of military leaves would be much higher. But that is obviously no reason to simply accept the category of "short-term military leave" that plaintiff invented.

Relatedly, plaintiff's invented category would have allowed him to smuggle into the class long leaves that could not possibly be comparable when considered on their own. For instance, a 30-day military leave is clearly not comparable in duration to bereavement, which usually lasts two days. But by taking the average of all leaves under 30 days, plaintiff was able to argue that even a 30-day leave is comparable because the *average* duration of "short-term military leave" at Alaska and Horizon was just three or four days. A judgment in plaintiff's favor, in other words, could entitle the class to compensation not just for three or four days leaves,

but for *all* leaves up to 30 days in length, even though longer leaves would not be comparable when evaluated individually (as plaintiff now argues is required).[7]

Plaintiff also says it was "absurd" for the district court to reject his preferred category because under the district court's analysis, all leaves will be comparable or none will—because the district court treated "short- and long-term military leave [as] an indivisible part of the relevant category of leave," the comparability of such leaves will always rise and fall together, so an employer would have to treat a one-year military absence the same as a one-day absence. AOB 24, 38. But under plaintiff's own theory, employers would have to treat a 30-day leave the same as a one-day leave, which makes no more sense. Plaintiff was the one who decided to litigate this case by lumping *all* military leaves lasting 30 days or less into a single category. To the extent the district court's analysis suffers from the problem plaintiff identifies, that is a problem of plaintiff's own making.

---

[7] Plaintiff contends that the district court's approach would violate the Rules Enabling Act, 28 U.S.C. § 2072(b), but it is plaintiff's gerrymander that creates the REA problem. Under plaintiff's theory, the 30-day-leave pilot's claim—which would have no chance of success individually—would suddenly be far stronger simply because *other* pilots took shorter military leaves. That cannot be right. The district court correctly rejected plaintiff's effort to use the class mechanism to construct a "fictional composite" plaintiff whose leaves would always be comparable in duration. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998).

**(c)**    **Plaintiff's critique of the district court's "categorical" approach is also wrong**

Nor does plaintiff provide a basis to reverse the district court's "categorical" approach to considering duration, rather than comparing the duration of individual military leaves to the duration of the relevant comparator leaves. *See, e.g.*, AOB 37-38. Plaintiff's argument here and below also requires a categorical approach— plaintiff wants this Court to consider the category of "short-term military leave," which is also what he asked the district court to do below. *See* SER-28-29.

Indeed, plaintiff's categorical approach is a necessary consequence of his decision to litigate this case as a class action. A class obviously could not be maintained if the reviewing court is required to compare the duration of each individual military leave to that of the comparator leaves. *See* SER-213-14 (plaintiff arguing that comparability could be adjudicated on a classwide basis rather than individually).

Plaintiff's real complaint is not with the district court's categorical approach, but with the fact that the district court declined to adopt plaintiff's gerrymandered "short-term military leave" category. And for the reasons explained above, the district court was quite right in doing so.

2.    *Military Leave Is Not Comparable In Frequency*

    **(a)**    **Analyzing frequency along with duration definitively precludes any finding of comparability**

Considering the duration of individual military leaves alone, moreover, does not provide the full picture.  The record shows that military leaves are taken frequently, which means that the total amount of military leave taken during a given period is substantially more than would be reflected in the average length of leave.  Alaska servicemember pilots took on average 31.4 days of military leave per year and 511 days across the class period.  SER-113.  At Horizon, pilots who took military leave took on average 45.7 days of military leave per year and 560 days across the class period.  SER-119.  The statistics for jury duty leave, sick leave, and bereavement are off by orders of magnitude.

No one could think an employer who provides pay during a leave that occurs on average six days over 16 years (as with jury duty at Alaska) discriminates against military status by failing to provide pay for a leave that occurs nearly 100 times as often (as is the case with military leave over the same period).  This comparison by itself suffices to affirm the judgment below.

    **(b)**    **The applicable DOL regulations authorize courts to consider frequency of leaves**

Plaintiff argues that the district court erred when it considered how frequently pilots take military leave.  His main argument is that courts can never consider frequency as a factor in the comparability analysis because frequency is

not expressly listed in § 1002.150(b). AOB 42-43. That is wrong as a matter of law.

Plaintiff ignores that § 1002.150(b)'s examples are illustrative, not exhaustive. The regulation does not say that duration, purpose, and control are the only factors that may be considered. Instead, it says that, in addition to duration, "other factors *such as* the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." 20 C.F.R. § 1002.150(b) (emphasis added). "[N]ote the words 'such as.'" *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021). They signify illustrative "example[s]," not a "limitation." *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989); *see also*, *e.g.*, *Google*, 141 S. Ct. at 1197. Reading "the phrase 'such as' to exclude all other possibilities" is contrary to the regulation's "plain meaning," because "[a]n objective reader would interpret the phrase 'such as' to mean 'for example.'" *Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc.*, 281 F.3d 733, 739 (8th Cir. 2002). The DOL's use of the phrase "such as" signifies its intent to grant "discretion" to consider "other factors" that are similar in kind to those it expressly enumerated (like "frequency"). *Macon Cnty. Samaritan Mem. Hosp. v. Shalala*, 7 F.3d 762, 767 (8th Cir. 1993). That is why the Seventh Circuit has held that "frequency" is an appropriate factor for courts to consider when

32

assessing leave comparability.  *See White*, 987 F.3d at 625 (remanding for fact development about "frequency and duration").

Plaintiff nevertheless argues that DOL deliberately omitted "frequency" as a factor.  AOB 42.  The basis for this argument is DOL's use of the word "frequency" in 20 C.F.R. § 1002.104.  But § 1002.104 simply parroted the text of 38 U.S.C. § 4312(h), thus negating any inference that DOL silently meant to exclude frequency as a factor under § 1002.150(b) by expressly using it in § 1002.104.  *See*, *e.g.*, *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 381 (2013) ("The force of any negative implication … depends on context.").

> **(c)**    **Analyzing the duration of individual leaves without considering their frequency would distort the comparability analysis**

Indeed, considering frequency is not only appropriate but indispensable here:  if duration were considered without frequency, obvious differences between an airline pilot's military leave and, say, sick leave would be obscured.  SER-106-07.  After all, sick leave (and jury duty and bereavement) are occasional and unpredictable—they are taken infrequently, in many cases less than once a year.[8] The average Alaska pilot who took one of these absences took jury duty leave once

---

[8] Most jurisdictions limit the frequency of jury duty summons.  *See, e.g.*, 28 U.S.C. § 1866(e).  And bereavement is a rare, serious life event, not a regular obligation like military leave.  *See* 2-ER-172-73.

every five years, bereavement leave once every two years, and 2.9 sick absences per year, while the average Horizon pilot who took one of these absences took jury duty and bereavement leave once every three years, and 3.2 sick absences per year. *See* SER-113, SER-119. This is nothing like pilots who took military leaves an average of 5.8 times per year at Alaska or 5.1 times per year at Horizon. *See* SER-113, SER-119. Considering the duration of any single leave alone without considering its frequency thus obscures the fact that pilots' military leaves but not their jury duty, sick, or bereavement leaves happen quite often—isolating the duration of one single instance of leave would grossly distort the analysis.

Considering frequency along with duration also shows why the leaves are not comparable even if the court accepts plaintiff's gerrymandered category of "short term military leave." Even if plaintiff could artificially limit the universe of military leaves to those that are 30 days long and shorter, those pilots spent substantially more total time on military leave than pilots who took comparator leaves when frequency is considered. For example, Alaska pilots who took "short-term military leave" took an average of just under six military leaves a year—much more frequent than, say, jury duty, which happens once every few years. That translates to 142 days of leave days during the class period, compared to (for example) six days of jury duty. *See* 5-ER-1001-02; SER-154-55 (includes data for all comparator leaves).

Including frequency in the analysis also answers plaintiff's argument that considering all military leaves in the duration analysis will force employers "to constantly reevaluate its comparability determinations and leave policies depending on how many employees happen to be on long-term military leave at any given time." AOB 38; *see also supra* at 29. When frequency is considered along with duration, the problem plaintiff identifies does not exist—however one calculates the duration of any individual leave, the total amount of leave is what it is. Employers obviously will know if their employees take military leave much more frequently than other leaves, and will also know that USERRA does not obligate them to provide paid military leave in those circumstances.

The fact that military duty leave happens much more frequently—and thus, includes many, many more days in the aggregate—than, say, jury duty leave, means that providing paid military leave is substantially more costly and burdensome to operations than providing paid jury duty leave. So the fact that the an employer is willing to do the latter but not the former cannot reasonably be ascribed to discrimination on the basis of military status. Just as "a two-day funeral leave will not be 'comparable' to an extended leave for service in the uniformed service," 20 C.F.R. § 1002.150(b), a leave that is taken a few days once a year (or less) is not comparable to military leave that is taken on average more than 30 days every year.

35

**(d)** **Contrary to plaintiff's contention, considering frequency in the comparability analysis will not nullify USERRA**

Plaintiff also asserts that the district court's consideration of frequency will "nullify" USERRA because "[i]f military leave were required to be comparable in frequency … military leave would never be comparable to any leave." AOB 44 (emphasis removed). That is incorrect. To start, many types of military leave do not recur frequently—for example, the service member's once-a-year training in *Waltermyer*. The reason that all different types of leave rose and fell together *in this case* is because plaintiff lumped them all together in his class action. Plaintiff's complaint is directly attributable to his own litigation tactics, not the district court's construction of USERRA.

Further, this case involves unusual facts arising from circumstances unique to airline pilots. Few employees in other industries take multiple military leaves per year that amount to a month of leave in aggregate. But while frequency is highly relevant in this case due to the peculiar military leave patterns unique to pilots, it would likely be less relevant among non-pilots, where it is much more common to encounter a service member who takes infrequent leaves. That is what happened in *Waltermyer*, for instance, where the plaintiff took a once-annual two-week leave, 804 F.2d at 822, so the court had no reason to further consider the frequency of leave. Frequency of leave will thus not be a relevant category in

many cases. But it is an indispensable category in this case for the reasons explained, and the district court did not err in considering it.

### B. The District Court Correctly Held That The Purpose Of Pilot Military Leave Is To Perform A Parallel Career, Unlike With Jury Duty Leave, Sick Leave, And Bereavement

Alaska and Horizon pilots perform military service as a "parallel career." *See* SER-71; *see supra* at 10-11. Plaintiff says that the district court erred in so concluding, but that is exactly what plaintiff testified. *Id.* "The same cannot be said of the other forms of leave provided in the CBAs." 1-ER-8. No one uses jury duty leave, sick leave, or bereavement to support a second career.

Military leave will not serve to facilitate a "parallel career" in most cases. For example, there was no evidence in *Waltermyer* that the plaintiff approached his once-annual absence for training as a parallel career. Ramp workers at Alaska and gate agents at Horizon, for example, typically take few days of military leave per year, and no such mechanic or gate agent has testified here that their military service is a "parallel career," as plaintiff testified on behalf of the class of Alaska and Horizon pilots. Accordingly, it is not true, as plaintiff argues, that military leave will categorically "never" be comparable in purpose to another leave under the district court's approach. AOB 44. In fact, there is another leave at Defendants that shares the same purpose—namely, personal leave—but plaintiff does not allege that personal leave is comparable, presumably because it is unpaid.

The important point, however, is that the district court's holding is narrow and fact specific—it does not even apply to other work groups at Alaska or Horizon, and it will have little, if any, application in cases not involving pilots.

By contrast, plaintiff's argument would mean that military leave is comparable in purpose to his comparator leaves in every case, regardless of the facts. He argues that the purposes of military leave and jury duty are to perform a "civic duty." AOB 30-31. And he argues that the purpose of sick leave and bereavement leave, as well as military leave, are to protect "public health and safety." AOB 31. But that would be true in every case if plaintiff's characterization were correct. Just as "[t]he 'purpose of the leave' cannot be defined so narrowly as to be unique to military leave," AOB 46, the purpose also cannot be defined at such a high level of abstraction that everything is comparable to everything else.

Plaintiff repeatedly suggests that by citing *Waltermyer* favorably, Congress meant to adopt a categorical holding that military leave is comparable to jury duty and sick leave (the leaves at issue in that case). It did not. It intended only to "affirm" *Waltermyer*'s most-favored-benefits rule. H.R. Rep. No. 103-65(I), at 33-34. Plaintiff thus makes the all-too-common mistake of placing undue weight on "buzzwords" in legislative history. *Wooden v. United States*, 142 S. Ct. 1063, 1078 (2022) (Barrett, J., concurring). And regardless, the plaintiff in *Waltermyer*

took once-annual military leave, which is fundamentally unlike the regular leaves that plaintiff and the class took to further their second careers.

Plaintiff's argument that military leave is comparable in purpose to sick leave and bereavement because all three "protect[] public health and safety," is especially "attenuated," 1-ER-22. Military leave is not like being sick or a relative dying—plaintiff's contrary suggestion borders on absurd. Moreover, bereavement leave at Horizon is discretionary with the Chief Pilot at Horizon, *see e.g.*, 5-ER-956, reflecting that any public purpose is subordinate to operational needs. And at both Alaska and Horizon, sick leave is earned, *see, e.g.*, 4-ER-617, 5-ER-945, thus reflecting a compensatory purpose. *See, e.g.*, *Moss v. United Airlines, Inc.*, 20 F.4th 375 (7th Cir. 2021) (sick leave is a form of deferred compensation for work performed). Military leave shares none of these features. *See, e.g.*, *Moss*, 420 F. Supp. 3d at 774-75 (holding sick leave at United not comparable to military leave); *Hoefert*, 438 F. Supp. 3d at 738-39 (same).

### C. The District Court Correctly Held That Pilots Have Far More Control Over The Timing Of Military Leave Than Over Other Leaves

#### 1. *Pilots Have Substantial Control Over The Timing Of Military Leave But Not Over The Timing Of The Comparator Leaves*

Pilots have "tremendous" control over when—or even whether—they take military leave. SER-80. The basis for this control is two-fold: pilots have flexibility in selecting their service dates and have negotiated CBA provisions that

provide them scheduling flexibility. *Supra* at 10-11. This flexibility means that pilots have control over whether their military service work and airline schedules conflict, and thus when and whether they have to take military leave. *Supra* at 10-11.

Given pilots' scheduling flexibility, plaintiff's interpretation of USERRA would have significant practical consequences for airlines and pilots alike. Plaintiff's theory is that pilots on military leave must be paid their full wages in addition to their military earnings for short-term periods of military leave. But if pilots can earn double pay for military service, then they will have every incentive to create scheduling conflicts. This would massively burden airline operations. SER-132-33. It would treat service members more favorably than their civilian peers by allowing them—and only them—to earn double pay, contrary to Congress' intent. *See Monroe v. Standard Oil Co.*, 452 U.S. 549, 561 n.13 (1981) (Congress did not intend for service members to receive "double compensation"); *Crews*, 567 F.3d at 865 (USERRA requires equal, not preferential, treatment). And it would unfairly tax non-military reserve pilots, who would have to pick up the slack left by service members who intentionally arrange military service to conflict with their work schedules in order to reap this windfall. *See* SER-132-33.

And given these incentives, adopting plaintiff's reading of USERRA would only amplify the stark differences between military leave on the one hand, and jury

duty, sick, and bereavement leave on the other. Service member pilots would take *far more* military leave than they currently do, which is already a lot. *See* SER-132-33.

Meanwhile, "[j]ury duty, bereavement, and sick leave do not typically allow for such flexibility." 1-ER-24. While it is of course true that "there can be *some* flexibility over when to take these leaves," AOB 33-34, the degree of control is categorically different: "it is more likely that death and illness will occur unexpectedly," and pilots "have far less control" when it comes to rescheduling jury duty absences, 1-ER-24; *see infra* at 42-43. And, unlike with military leave, providing pay during these infrequent and usually unwelcome leaves does not create any incentive for pilots to take *more* leave than otherwise is necessary.

### 2. *Plaintiff's Contrary Arguments Are Legally And Factually Mistaken*

Citing an unpublished district court decision, plaintiff argues that the district court should have evaluated the "voluntariness" of military leave, not the service member's control over timing. AOB 33 (citing *Huntsman v. Sw. Airlines Co.*, 2021 WL 391300, at *6 (N.D. Cal. 2021)); *see also id.* at 47-48. Plaintiff's legal argument squarely conflicts with § 1002.150(b), which states that "the ability of the employee to choose when to take the leave should also be considered." 20 C.F.R. § 1002.150(b) (emphasis added). Thus, "what matters is an employee's control over the timing of her leave of absence—i.e., whether she has the option to

41

choose when to take a given stretch of leave." *White*, 987 F.3d at 625 (emphasis in original).[9]

Plaintiff also argues that pilots can exercise "some flexibility over when to take" non-military leaves because they can schedule doctors' appointments, attend planned funerals, and defer "jury service under certain conditions." AOB 33-34. But if that were enough to establish comparability, the control-over-timing factor would be satisfied in every case. That is, in fact, what plaintiff argues—he says that "there has long been consensus that the types of leaves at issue here are comparable." AOB 33. If that were true, however, the control factor would be pointless. Nor is there actually a "consensus." Courts reach *different* outcomes based on *different* facts, as they should. *Supra* at 22-23.

The facts here, like the facts in other cases involving the unique position of pilot, show that what matters is not that pilots have "*some* flexibility"—of course they do—but that the *degree* to which pilots control when and whether they take military leave is incomparable. Military service is usually set well in advance, so pilots can exercise their scheduling flexibility to plan around it (or to schedule conflicts). *Supra* at 10-11. But "it is more likely that death and illness will occur

---

[9] Plaintiff suggest that DOL adopted *Waltermyer*'s specific holding that the service there was "involuntary." AOB 33. It did not; it did not even use the word "voluntary" in the regulation. Like Congress, the DOL adopted *Waltermyer*'s most-favorable-benefit rule. 70 Fed. Reg. 75,246 (Dec. 19, 2005); *supra* at 38-39.

unexpectedly," and pilots "have far less control" when it comes to rescheduling jury duty absences. 1-ER-24. Plaintiff says there is "no record evidence" supporting these (obvious) points, but that is not true. *See* SER-57-58 ("nobody dictates ... when a close relative dies"); SER-91-93. Nor is it Defendants' burden to prove that these leaves are *in*comparable—if plaintiff wanted to argue that military and non-military leaves are comparable because pilots have comparable flexibility to schedule military leave as when they get sick or when their relatives die, then it was *his* burden to prove that improbable fact. *See White*, 987 F.3d at 624; Kathryn Piscitelli & Edward Still, *The USERRA Manual: Uniform Services Employment & Reemployment Rights* § 3:3 (2021). He did not.

*     *     *

Taking more than a month of leave per year to pursue a parallel career is not like receiving a jury duty summons, illness, or the death of a loved one. The latter events are typically short, infrequent, and unexpected. For pilots, military leave is different: it is longer, more frequent, flexible, and is taken to maintain a second job. Treating military leave differently from jury duty, sick, and bereavement leave is not discrimination; it is simply treating different cases differently. The district court properly so held as a matter of law on the undisputed evidence.

## II. "PAY DURING LEAVE" IS NOT A BENEFIT UNDER THE CBAS

Plaintiff's claim fails for a second reason. The benefit he purports to seek—what he calls "pay during leave"—is not a benefit under the applicable CBAs. To the extent plaintiff reads the CBAs differently, this Court would be divested of jurisdiction under the RLA and would be required to stay proceedings so the CBAs can be construed by the system board. *See Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920-22 (9th Cir. 2018) (en banc); *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 317-38 (7th Cir. 2002). The Court need not reach this issue if it affirms the district court on the grounds discussed in Part I. But the Court can affirm—or stay proceedings—on the ground set forth in this Part as well. *See Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 966 (9th Cir. 2021).

### A. The CBAs Do Not Provide "Pay During Leave" As A Benefit

USERRA requires employers to provide service members the same benefits they provide during comparable non-military leaves. 38 U.S.C. § 4316(b); 20 C.F.R. § 1002.150(b). The term "benefit" (or, interchangeably "rights and benefits") means "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2).

Two courts of appeals have held at the dismissal stage that "pay during leave" can, in principle, satisfy this definition. *See Travers v. Federal Exp. Corp.*, 8 F.4th 198, 208 (3d Cir. 2021); *White*, 987 F.3d at 623. Under these cases, if an employer provides by contract or policy the benefit of "pay during leave" during a non-military leave, then § 4316(b) would require it to provide "pay during leave" during comparable military leaves. But those cases were evaluated on the pleadings, where plaintiffs alleged that their employers provided "pay during leave" as a benefit. This case, in contrast, is at summary judgment, and the full record—including Defendants' actual CBAs, which are the "employment contracts" from which any USERRA "benefit" must derive, 38 U.S.C. § 4303(2)—are before the Court. And for the reasons explained below, the actual CBAs do not provide "pay during leave" as a separate benefit. *See id.* The CBAs provide full benefits, like paid sick leave and paid jury duty leave. "Pay during leave" is a component part of those full benefits, but it is not itself a standalone benefit under the CBAs, which is the only thing USERRA protects.

1. *Under The CBAs, "Pay During Leave" Is A Component Part Of A Benefit, Not A Standalone Benefit*

"Pay during leave" is not a benefit under Defendants' CBAs. Paid sick leave is a benefit guaranteed under the CBAs. *See, e.g.*, 4-ER-618, 5-ER-945. So are paid jury duty leave and bereavement. *See, e.g.*, 4-ER-613, 4-ER-651-52, 5-ER-956-57. For plaintiff's theory to work, however, he must break these whole

45

benefits into their constituent parts.  Take paid sick leave.  On plaintiff's theory, the benefit cannot be "paid sick leave" because Defendants do not deny paid sick leave to pilots on military leave.  Instead, for plaintiff to prevail, the CBAs' singular paid-sick-leave benefit must actually be split into two benefits:  (i) the right to be absent when sick (in other words, *unpaid* sick leave); and (ii) "pay during leave."

Plaintiff fully acknowledged this point below.  He agreed that his theory required viewing the benefits provided by Defendants as "(i) the right to leave work and (ii) the right to receive wages."  SER-23.  And he argued that "[p]recisely because Defendants provide benefits *with both components*, but only the former *component* for military leave, is what establishes the USERRA § 4316(b) violation."  SER-23-24 (emphasis added).  But USERRA, by its plain terms, protects benefits under a contract, not "components" of benefits.  38 U.S.C. §§ 4316(b), 4303(2).  Plaintiff's admission is fatal to his claim.

Plaintiff tries to salvage his case on appeal by arguing that Defendants' CBAs provide a benefit that he calls "protect[ion] from loss of pay."  AOB 18. But protection from loss of pay is just the pay component of the CBAs' paid-leave benefits.  Plaintiff's record citations, for instance, simply reflect the whole benefits that Defendants' CBAs offer.  *See* 4-ER-604, 4-ER-613, 4-ER-618, 4-ER-652 (Alaska); 5-ER-955-57 (Horizon).  Plaintiff also cites the Compensation provision

of the Horizon CBA, but this provision simply states a "Pilot will not have his Minimum Guarantee prorated as a result of paid training, paid vacation, paid sick leave, or other paid time off"—again confirming that the benefits are the various forms of paid leave like "paid sick leave." *See* 5-ER-913-14. Finally, plaintiff cites testimony from Alaska's corporate representative that states Alaska "pay-protect[s]" pilots on jury duty leave, but again, pay protection is just the pay component of Defendants' paid leave benefits. *See* 3-ER-369. Put differently, the *reason* a pilot gets paid when she is on jury duty, at a funeral, or sick, is because the CBAs establish the benefits of paid jury duty, paid bereavement, and paid sick leave.

Of course, employers, including Defendants, often provide whole benefits during non-military leaves, and if they deny service members those same whole benefits during comparable military leaves, they violate USERRA. That is what happened in *Waltermyer*. There, the Third Circuit began by noting that courts "must look to the collective bargaining agreement to determine the rights of … employees to various benefits." 804 F.2d at 824-25. Under the CBA in *Waltermyer*, employees absent for various non-military leaves during weeks with holidays still received the benefit of "holiday pay"—a whole benefit—so a service member on comparable leave needed to receive that benefit too. *Id.* at 825. The same is true of *Woodall*, on which plaintiff relies. *See* Second Am. Compl.,

*Woodall v. Am. Airlines, Inc.*, 3:06-cv-0072-M (N.D. Tex.), ECF No. 14.  The DOJ alleged that American violated USERRA because, under the pilot CBAs, the airline provided more generous vacation and sick-leave accruals to pilots on non-military leaves than on comparable military leave.  *See id.* ¶¶ 12-14, 16-19, 21-32.  By contrast, DOJ did *not* allege that American violated USERRA because it did not provide "pay during leave," even though American provided paid civilian leaves.  *See id.* ¶ 35(b).  And *Waltermyer* expressly did *not* hold that the plaintiff was entitled to his "regular wages in addition to juror fees," even though employees absent for jury duty were entitled their wages and juror fees.  804 F.2d at 825.  In fact, in *Rogers*, the Fifth Circuit *granted* summary judgment to the employer on the plaintiffs' argument that they were entitled to lost straight-time pay and overtime while they were on military leave.  392 F.3d at 771.

### 2. *Defendants' CBAs Are Consistent With USERRA's Definition Of Benefits*

None of this is to say that employers can manipulate CBA definitions to avoid USERRA's requirements.  But Defendants' provision of whole benefits in their CBAs is entirely consistent with USERRA.  Congress tethered USERRA's guarantee of benefits to benefits that employers already provide "by reason of an employment contract or agreement or an employer policy, plan or, practice."  38 U.S.C. § 4303(2); *id.* § 4316(b); *see also Waltermyer*, 804 F.2d at 824-25 ("Although the statute establishes equality as the test, we must look to the

collective bargaining agreement to determine the rights of … employees to various benefits."). And employers typically provide whole benefits—they do not typically divide benefits into their component parts. Nothing in USERRA requires employers to alter that ordinary practice, or to create new benefits that it would not otherwise provide.

That much is confirmed by § 4303(2)'s definition of "benefit." That definition includes a list of exemplars, and that list includes "vacations"—a specific type of paid leave—as an exemplary benefit, which it would not do if an employer were required to define "pay during leave" as a separate benefit. Indeed, it would make little sense for "vacation" and "pay during leave" both to be benefits when the latter is a subset of the former. The definition of "benefit" confirms that specific types of paid leave (e.g., "vacations") count as benefits, and that employers are thus not required to divide whole benefits like vacation (or paid sick leave, or paid jury duty leave, or paid bereavement) into component parts (e.g., unpaid sick leave and pay during leave).

This statutory evidence, moreover, accords with the more general, common sense understanding of the nature of employment benefits. No one understands a paid leave benefit as actually being two benefits—unpaid leave and the right to get paid during the leave. One need look no further than DOL itself, which treats various forms of paid leave as individual whole benefits rather than breaking those

49

benefits up into their constituent parts. *See, e.g.*, 20 C.F.R. §§ 1002.7(c)-(d) (treating paid military leave as a "benefit"), 1002.150(c) ("vacation leave is considered to be a non-seniority benefit"); *see also* U.S. Bureau of Labor Statistics, Department of Labor, Employer Costs for Employee Compensation - December 2021 (Table 1) (Mar. 18, 2022) (listing various forms of "[p]aid leave" "benefits," including "[v]acation," "[h]oliday," "[s]ick," and "[p]ersonal").

In short, USERRA's definition of benefits does not require employers to define vacation as "the right to leave work" and, separately, "the right to receive wages." SER-23. Rather, a benefit under USERRA is defined by the relevant employment contract, and under the Alaska and Horizon CBAs, there is no such separate benefit as "pay during leave." Here, there are the benefits of paid sick leave, paid jury duty leave, and paid bereavement leave. Plaintiff does not allege that USERRA required Defendants to provide any of those benefits during his military leaves, so his claim fails at the threshold.

3. *Plaintiff's Interpretation Is Inconsistent With The Federal Government's Interpretation Of USERRA*

The vast majority of employers provide some form of paid short-term non-military leave. At the time of USERRA's enactment, for example, at least 94% of full-time employees of state and local governments and well over half of full-time private employees were eligible for paid sick or jury duty leave in 1994, including

nearly 60% of small-business employees and 85% of large-business employees.[10]
According to plaintiff's theory of this case, that means that the majority of
employers must also provide paid military leave. If that is so, then several federal
agencies responsible for administering and enforcing USERRA have completely
misconstrued that statute.

DOL. DOL administers USERRA. It explains:

- USERRA "does not require an employer to pay an employee for time away from work performing service." 20 C.F.R. § 1002.7(c).

- Differential pay "is neither required by nor addressed in USERRA." 70 Fed. Reg. 75,246, 75,249 (Dec. 19, 2005).

These statements are wrong if plaintiff is right. Again, a majority of
employers provide paid short-term leave such as sick leave or jury duty leave. On

---

[10] Bureau of Labor Statistics, Department of Labor, BLS Reports on Employee
Benefits in State and Local Governments, 1994 (Sept. 14, 1995),
https://www.bls.gov/news.release/history/ebs2_091495.txt (94% of fulltime
employees of state and local governments had paid sick leave and jury duty leave
in 1994); Bureau of Labor Statistics, Department of Labor, BLS Reports on
Employee Benefits in Small Private Industry Establishments, 1994 (Sept. 14,
1995), https://www.bls.gov/news.release/history/ebs_091495.txt (58% of fulltime
employees of private establishments with fewer than 100 employees had paid jury
duty leave and 50% had paid sick leave in 1994); Bureau of Labor Statistics,
Department of Labor, BLS Reports on Employee Benefits in Medium and Large
Private Establishments, 1995 (July 25, 1997),
https://www.bls.gov/news.release/history/ebs3_020398.txt (85% of full-time
employees of private establishments with at least 100 employees had paid jury
duty leave and 58% had paid sick leave in 1995). (At the time, BLS
surveyed small private establishments and medium and large private
establishments in alternating years.)

plaintiff's theory, then, USERRA *would* require most employers to "pay an employee for time away from work performing service," and *would* under one of plaintiff's theories require differential pay (i.e., the difference between military and civilian wages).

DOL would also be misinforming America's employees about their rights. USERRA requires employers to post notice of employees' rights, 38 U.S.C. § 4334, and the poster that DOL is required to provide employers contains no mention of paid military leave.[11] That would be an odd omission if the large majority of employers would in fact be required to provide paid military leave, which would be the case under plaintiff's theory.

OPM. The Office of Personnel Management maintains the federal government's leave policies. The federal government provides federal employees with paid military leave under 5 U.S.C. § 6323, limited to 15 days of full pay and 22 days of pay for additional operations offset by military pay (i.e., differential pay). Yet the federal government, which is subject to USERRA as an employer, 38 U.S.C. § 4303(4)(A)(ii), also provides federal employees paid sick leave, 5 U.S.C. § 6307, jury duty leave, 5 U.S.C. § 6322, and bereavement leave, 5 U.S.C. § 6326. Thus, under plaintiff's theory, the federal government would also be

---

[11] https://www.dol.gov/sites/dolgov/files/VETS/legacy/files/USERRA_Private.pdf.

required to provide military leave under USERRA, independent of the limitations set forth in § 6323. Yet OPM instructs federal employees that they are only entitled to the military leave provided by § 6323, and nowhere mentions the availability of paid military leave under USERRA.[12] That position is irreconcilable with plaintiff's theory.

DOJ. The Department of Justice enforces USERRA. *See* 38 U.S.C. § 4323(a). To Defendants' knowledge, DOJ has *never* taken the position that paid military leave is required under any circumstances. That includes the *Woodall* case that plaintiff repeatedly cites: the federal government did not allege that American Airlines violated USERRA by not providing paid military leave, to the same extent it provided other types of paid leave—including paid sick and paid vacation leave. *See Woodall*, *supra* at 48, ¶ 35(b).

## B. Plaintiff's Claim Is Precluded By The RLA To The Extent He Interprets Defendants' CBAs Differently

To the extent plaintiff reads Defendants' CBAs differently—i.e., to provide a standalone "pay during leave" benefit—the case must be stayed so that CBA-interpretation question can be resolved by the system board of adjustment. *See Tice*, 288 F.3d at 317-38. Under the RLA, the federal statute governing labor-management relations in the airline industry, any dispute that requires the

---

[12] https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/military-leave/

interpretation or application of a CBA is known as "minor dispute[.]" *See, e.g.*, *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-23 (1945). "Federal courts do not have jurisdiction to resolve minor disputes." *Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 280 F.3d 901, 904 (9th Cir. 2002); *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1470 (9th Cir. 1991); *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Alaska Airlines, Inc.*, 813 F.2d 1038, 1040 (9th Cir. 1987). Instead, "[m]inor disputes must be addressed through the CBA's established grievance mechanism, and then, if necessary, arbitrated before the appropriate adjustment board." *Schurke*, 898 F.3d at 917.

Here, the relevant CBAs do not provide a benefit called "pay during leave." *See supra* at 45-48. If plaintiff reads the CBAs differently, it would give rise to a minor dispute because resolving that dispute would turn entirely on which party's interpretation of the CBA is correct. "The court's role is not to resolve th[is] labor dispute, but to protect the role of grievance and arbitration as a forum for doing so to the extent that forum's unique area of competency—CBA disputes—is at issue." *Schurke*, 898 F.3d at 923. As such, if plaintiff disagrees with Defendants' interpretation, the litigation would need to be stayed to permit the parties to obtain a decision from the applicable system boards of adjustments. *See, e.g.*, *Tice*, 288 F.3d at 318.

## CONCLUSION

For these reasons, the decision below should be affirmed.

Dated: June 13, 2022

Respectfully submitted,

TRISTAN MORALES
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
tmorales@omm.com

By: /s/ Anton Metlitsky
ANTON METLITSKY
MARK W. ROBERTSON
CHARLES MAHONEY
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
ametlitsky@omm.com
mrobertson@omm.com
cmahoney@omm.com

JASON ZARROW
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
jzarrow@omm.com

*Attorneys for Defendants-Appellees
Alaska Airlines, Inc. and Horizon Air
Industries, Inc.*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and Circ. R. 32-1(a) because this brief contains 12,580 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.


/s/ Anton Metlitsky
Anton Metlitsky

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2022, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: June 13, 2022    Respectfully submitted,

       /s/ Anton Metlitsky
       ANTON METLITSKY
       O'MELVENY & MYERS LLP
       7 Times Square
       New York, New York 10036
       (212) 326-2000