No. 21-35473

# In the United States Court of Appeals For the Ninth Circuit

———————————————

CASEY CLARKSON, on behalf of himself and all others similarly situated,
*Plaintiff-Appellant,*

v.

ALASKA AIRLINES, INC., and HORIZON INDUSTRIES, INC.,
*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court
for the Eastern District of Washington, Spokane
Case No. 2:19-cv-0005 (The Honorable Thomas O. Rice)

## PLAINTIFF-APPELLANT'S REPLY BRIEF

R. JOSEPH BARTON
COLIN M. DOWNES
BLOCK & LEVITON LLP
1633 Connecticut Ave. NW, Suite 200
Washington, DC 20009
(202) 734-7046

VINCENT CHANG
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 968-8999

DEEPAK GUPTA
JONATHAN E. TAYLOR
PETER ROMER-FRIEDMAN
ROBERT FRIEDMAN
GUPTA WESSLER PLLC
2001 K Street NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741

ADAM T. KLEIN
MICHAEL J. SCIMONE
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 209-0671

*Counsel for Plaintiff-Appellant*
*(additional counsel listed on inside cover)*

August 25, 2022

MATTHEW Z. CROTTY
CROTTY & SON LAW FIRM PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
(509) 850-7011

THOMAS G. JARRARD
LAW OFFICE OF THOMAS G. JARRARD LLC
1020 N. Washington Street
Spokane, WA 99201
(425) 239-7290

# **TABLE OF CONTENTS**

Table of authorities.................................................................................ii

Introduction......................................................................................... 1

Argument.............................................................................................4

    I.    Comparability is a jury question, and the jury may decide that "all, none, or only part of" the military leaves at issue in this case are comparable to at least one kind of non-military leave. ...........4

    II.    The airlines concede that at least some of the military leaves at issue in this case "may well be found comparable" to other leaves—which is all that is needed to resolve this appeal. ................... 7

    III.    Even without their concession, the airlines cannot defend the district court's analysis or establish that they are entitled to summary judgment on comparability grounds....................................13

    IV.    The defendants' "benefits" argument is not presented in this appeal, does not divest this Court of jurisdiction, and contradicts USERRA's plain text and every case interpreting it.........19

Conclusion ....................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Alaska Airlines Inc. v. Schurke*,
  898 F.3d 904 (9th Cir. 2018) ........................................................ 23

*Buchanan v. Watkins & Letofsky, LLP*,
  30 F.4th 874 (9th Cir. 2022) ........................................................ 20

*E.E.O.C. v. National Education Association, Alaska*,
  422 F.3d 840 (9th Cir. 2005) .......................................................... 4

*Graham v. Long Island Railroad*,
  230 F.3d 34 (2d Cir. 2000) ............................................................. 5

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246 (1994) ..................................................................... 22

*Howell v. Wexford Health Sources, Inc.*,
  987 F.3d 647 (7th Cir. 2021) ....................................................... 4, 5

*Merck Sharp & Dohme Corp. v. Albrecht*,
  139 S. Ct. 1668 (2019) .................................................................. 5

*Monroe v. Standard Oil Co.*,
  452 U.S. 549 (1981) ...................................................................... 2

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ......................................................... 15

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000) ................................................................... 4, 6

*Rogers v. City of San Antonio*,
  392 F.3d 758 (5th Cir. 2004) .......................................................... 4

*Syufy Enterprises v. American Multicinema, Inc.*,
  793 F.2d 990 (9th Cir. 1986) .......................................................... 5

*Travers v. Federal Express Corp.*,
  8 F.4th 198 (3d Cir. 2021) ...................................................... *passim*

*Tully v. Department of Justice,*
    481 F.3d 1367 (Fed. Cir. 2007)............................................................10

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) ...........................................................................15

*Waltermyer v. Aluminum Co. of America,*
    804 F.2d 821 (3d Cir. 1986) ...........................................................8, 14

*Wheeler v. Georgetown Univiversity Hospital,*
    812 F.3d 1109 (D.C. Cir. 2016)............................................................ 5

*White v. United Airlines,*
    987 F.3d 616 (7th Cir. 2021).................................................... *passim*

*Won v. Amazon.com, Inc.,*
    2022 WL 3576738 (E.D.N.Y. Aug. 19, 2022)..................................19, 22

## Statutes

38 U.S.C. § 4303(2) .........................................................................19, 22

## Regulations

20 C.F.R. § 1002.150(b)................................................................ 2, 10, 11, 16

# INTRODUCTION

The issue in this appeal is narrow: whether the evidence, when viewed most favorably to plaintiff Casey Clarkson, would allow for a finding that at least some of the military leaves at issue are comparable to at least one type of non-military leave.

Clarkson answers yes. He takes the modest position that comparability is a question for the jury, and that "the jury could find that 'all, none, or only part of' the military leaves at issue are comparable to another leave." Opening Br. 35–36.

By contrast, the airlines must defend the district court's extreme position: that *none* of the military leaves at issue are comparable to any other leave *as a matter of law*. And they must do so in a way that would allow section 4316(b)(1) and its implementing regulation to retain some real effect—an impossible task. *See* Opening Br. 3, 38, 44.

In trying to thread this needle, the airlines concede this appeal. They admit (at 4) that it is "obviously . . . true" that each "service member's short, once-a-year training may well be found comparable to (for example) jury leave." The claims here, however, *include* claims based on that training. So if this stretch of leave may be found comparable to jury-duty leave, as the defendants concede, there is no way that they were entitled to summary judgment on comparability. That alone warrants reversal.

But the airlines' concession goes beyond just claims pegged to annual training; it is irreconcilable with their arguments as to the other claims too. For example, the airlines embrace the district court's view that "military leave is not comparable in

duration" to the comparator leaves because its "average duration" is higher once long-term military leave (which is not at issue) is added. Br. 17. But as the concession shows, that cannot be right. The airlines acknowledge that leave to attend a 14-day training is "short" when compared to other leaves—even though the average length of all military leave is unchanged. Because more than 95% of the military leaves at issue are under 14 days, the defendants themselves concede that nearly all the relevant leave is comparable in duration, the "most significant" factor. 20 C.F.R. § 1002.150(b).

The same is true for the other enumerated factors: "the purpose of the leave and the ability of the employee to choose when to take the leave." *Id.* The airlines identify no meaningful difference—as to either factor—between the concededly comparable leave and the other military leaves at issue in the case. As a result, the military leave that they single out as comparable is indistinguishable from the other military leaves in question as to all three factors enumerated in the regulation.

Their bid for summary judgment, then, reduces to the proposition that an *un*enumerated factor (frequency) is the end-all and be-all of the analysis. That is, they claim that a defining feature of life as a reservist—"frequent absences from work," *Monroe v. Standard Oil Co.*, 452 U.S. 549, 565 (1981)—negates comparability. The airlines give one reason for this: because frequency affects "the total amount of leave," which affects "cost[s]." Br. 35. On this view, cost supplies a neutral justification for treating short-term military leave worse than otherwise comparable non-military leaves.

But even if the total amount of leave were all that mattered, the record here still would not compel judgment for the airlines. For both vacation and sick leave, the total number of days taken by pilots dwarfs the total taken for short-term military leave—and exceeds even the sum of *all* military leave taken. *Contra* Br. 2 (falsely asserting that "pilots spend orders of magnitude more time on military leaves than . . . sick . . . leave"). A jury could therefore reasonably conclude that the airlines' willingness to provide benefits to employees on vacation or sick leave, but not to those on short-term military leave, cannot be justified by cost concerns. Rather, it is attributable to a judgment that military leave is less deserving of benefits—exactly the kind of anti-military value judgment that Congress sought to stamp out.

The airlines' concession is relevant on this front as well. If the aggregate leave is what matters, and a 14-day annual training is comparable, that could allow for up to 224 days of comparable leave over the 16-year class period. Yet class members took an average of 82 days less than that. Br. 34. The airlines never attempt to reconcile these two views. Nor do they try to square their position on comparability with the DOJ's contrary position in *Woodall v. American Airlines*, No. 06-72 (N.D. Tex.).

Instead, they pivot to an entirely new issue: whether paid leave is a "benefit." But this issue wasn't passed on below, so this Court should leave it for remand. If it does reach the issue, however, the Court should join the Third and Seventh Circuits in rejecting the airlines' argument as inconsistent with the plain statutory text.

**ARGUMENT**

**I.  Comparability is a jury question, and the jury may decide that "all, none, or only part of" the military leaves at issue in this case are comparable to at least one kind of non-military leave.**

Before turning to the central issue on appeal, two points merit a quick word:

The first is that comparability presents "a factual inquiry" for a jury, as the district court observed. 1-ER-10, 11, 14. It does not present a legal inquiry for a judge, as the defendants argue (at 21–23). *See Travers v. Fed. Express Corp.*, 8 F.4th 198, 209 n.26 (3d Cir. 2021) (recognizing that comparability is for the "factfinder"); *White v. United Airlines*, 987 F.3d 616, 625 (7th Cir. 2021) (comparability is "primarily a question of fact"); *Rogers v. San Antonio*, 392 F.3d 758, 771–72 (5th Cir. 2004) (reversing summary judgment on comparability). The "ultimate question" driving the comparability analysis, to use the defendants' words (at 24), "is the same as the question at the heart of all discrimination cases": Is there a neutral justification for unequal treatment? And as in any discrimination case, that "ultimate question"—the "ultimate fact of discrimination"—is to be decided by the jury as "the trier of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–48 (2000); *see E.E.O.C. v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 844 (9th Cir. 2005) (calling this "the main factual question" for the jury).

For this reason, courts have held that comparability likewise "presents a jury question" in discrimination cases, just as it does in other contexts. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 657 (7th Cir. 2021); *see, e.g., Wheeler v. Georgetown Univ.*

*Hosp.*, 812 F.3d 1109, 1116 (D.C. Cir. 2016) ("[W]hether two employees are similarly situated is ordinarily a question of fact for the jury."); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (same); *see also Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1003 (9th Cir. 1986) ("Comparability is a question of fact [in an antitrust case]."). Only "when the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison" between the relevant comparators may the issue of comparability be resolved at summary judgment. *Howell*, 987 F.3d at 657.

To be clear, this is not to say that a jury should decide the meaning of section 4316(b) or its implementing regulation. That is the role of a judge. *See Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1680 (2019). But the defendants themselves contend that the regulation simply sets forth "a list of non-exclusive factors to guide" what is ultimately the same factual question in "all discrimination cases." Br. 24. So even on their own reading, applying the regulation to a particular dispute—that is, deciding how much weight to give each factor and which inferences to draw from the evidence, among other things—is a task that is ultimately for the jury.

Nor are the facts here "undisputed." *Contra* Br. 22. To the contrary, the parties quarrel about numerous material facts and inferences—including how much weight to give each factor, which metrics to use when comparing leaves, which inferences to draw from statistical evidence, the purpose of the leaves, the degree of control that pilots have when taking them, and the ultimate question of whether the unequal

treatment is attributable to a neutral justification. Resolving these disputes "are jury functions, not those of a judge" at summary judgment. *Reeves*, 530 U.S. at 150–51.

The second preliminary point is about Clarkson's theory of liability—namely, his allegation that all short-term military leaves are comparable to at least one form of non-military leave. The airlines try to portray this theory of liability as an attempt to "gerrymander comparability by excluding longer leaves," Br. 18, and as one that "requires a categorical approach" to duration, under which "employers would have to treat a 30-day leave the same as a one-day leave." Br. 29–30. Neither is true.

As Clarkson repeatedly stated in his opening brief, he is not urging an all-or-nothing approach. His position is that comparability looks to the duration of each military leave in question, so "the jury could find that 'all, none, or only part' of the military leaves at issue are comparable to another leave." Opening Br. 35–36; *see id.* at 4, 26, 29 (noting that a jury could find that only "some" or "part of" the "relevant military leave is similar in duration"). "It could find, for instance, that only leaves up to 10 or 14 days are comparable." *Id.* at 36. Or it could find that "just three or four days" are comparable. *Contra* Br. 28–29. Were it to do so, the airlines would not be required to "treat a 30-day leave the same as a one-day leave." Br. 29.

The reason that Clarkson drew the line at 30 days in this case is not because he thinks that it's a categorical approach and everything within the 30-day category must rise or fall together. Rather, he drew the line at 30 days because he believes that

everything in that category is comparable in duration to the other leaves (even if some are more so than others). But again, he freely admits that a jury need not agree.

And even if a jury were to conclude that some or all of the relevant military leaves are comparable to another type of leave, that conclusion would require only *equal* treatment as to each comparable leave type—not preferential treatment. *See* Opening Br. 36. A finding of comparability as to bereavement leave, for instance, would entitle Horizon pilots to just three days of paid military leave per year. 5-ER-900. And a finding of comparability as to vacation or sick leave would similarly cap the paid days at the numbers for those leaves. A jury could even find, if it saw fit to do so, that the benefit provided for jury-duty leave is not an unlimited number of paid days per leave but only some fixed amount in "practice." *Travers*, 8 F.4th at 204.

The point is this: The defendants cast this case in decidedly stark terms—as whether they must pay class members for *all* days of *all* short-term military leave taken during the class period, or *no* days for *any* such leave. But that is a false choice. Although jurors could theoretically resolve the case at one of these extremes, they will also be permitted to land somewhere in between. The choice will be theirs.

## II.  The airlines concede that at least some of the military leaves at issue in this case "may well be found comparable" to other leaves—which is all that is needed to resolve this appeal.

With these preliminaries out of the way, we now turn to the main question on appeal: whether a jury could make a finding of comparability for "any given stretch

of military leave" at issue. *White*, 987 F.3d at 625. The district court granted summary judgment because it held that none of the military leaves at issue are comparable to any non-military leave as a matter of law. As Clarkson explained in his opening brief, that was error. There is ample evidence to permit a finding that all or "part of" the short-term military leaves at issue are comparable to "other short-term" leave. *Id.*

The defendants now concede as much. On page four of their brief, they admit that it is "obviously . . . true" that a "service member's short, once-a-year training may well be found comparable to (for example) jury duty, which is what happened in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986)."

About this much, the defendants are right. Congress codified *Waltermyer*'s most-favorable-treatment rule when it enacted section 4316(b)(1). And both the statute and its implementing regulation would be deprived of practical effect if military leave could never be comparable to any other kind of leave as a matter of law.

But the defendants fail to appreciate the consequences of their concession: It dooms their argument on comparability—both directly and indirectly.

**A.** The most direct way in which it does so is that this case *encompasses* military leaves for annual training. So if USERRA requires that these leaves be treated the same as "(for example) jury duty," as the defendants concede, the defendants cannot possibly be entitled to summary judgment on comparability grounds.

8

The defendants' only response is to say (at 4) that Clarkson "did not limit his claim[s]" to leaves taken for annual training. But that is irrelevant. USERRA either requires the airlines to provide equal benefits during those leaves or it does not. The answer does not change depending on how a plaintiff drafts a complaint or defines a class, or whether he also claims a right to equal treatment for other leaves. Stated differently, if Clarkson's rights were violated during his leaves for annual training, he is entitled to recover regardless of whether he can prove violations for other leaves. One violation is not undone by failing to prove another. If a plaintiff alleged that his employer had racially discriminated on six separate occasions in a year, no one would think that the employer could prevail simply by arguing that it had committed racial discrimination only *once* that year. Yet that is what the defendants argue here.

The defendants try to head off this logic by claiming that Clarkson's theory of liability "requires a categorical approach," under which "employers would have to treat a 30-day leave the same as a one-day leave." Br. 28–30. But as just explained, Clarkson is not pressing an all-or-nothing approach. To reiterate: His position is that comparability requires examining the length of each military leave in question. So "the jury could find that 'all, none, or only part' of the military leaves at issue are comparable to another leave." Opening Br. 35–36; *see id.* at 4, 26, 29. Were it to find that only "some" of the "military leave is similar in duration to the other leaves," *id.* at 29, the airlines would not have to give equal treatment to longer military leaves.

In short, the defendants have conceded that at least some of the military leaves at issue in this case—those taken to attend the annual training—may be comparable to non-military leave. That alone is enough to reverse and remand.

**B.** The defendants' concession, however, affects far more than just those leaves. In admitting that an annual two-week military leave may be comparable to jury-duty leave, the defendants confirm three key points made in Clarkson's opening brief. Together, these points are fatal to the defendants' position on appeal.

*First*, through their concession, the defendants recognize that comparability requires assessing the length of a particular "stretch of military leave," *White*, 987 F.3d at 625—not the average length of *all* military leave, including long-term leave. *Contra* Br. 28–29. Otherwise, their concession that a "short" infrequent leave is comparable would mean that a *long* infrequent leave is also comparable. Br. 4. After all, both are part of the same category of military leave (and even occur with similar frequency). But that is plainly wrong. The regulation itself says otherwise, as do the cases. *See* 20 C.F.R. § 1002.150(b); *Tully v. Dep't of Just.*, 481 F.3d 1367, 1370 (Fed. Cir. 2007) (holding that *Waltermyer*'s conclusion about the comparability of a two-week leave does not extend to a two-year leave). The defendants express no disagreement on this score.

Instead, they repeatedly emphasize that servicemember pilots took an average of "31.4 days of military leave per year" at Alaska. Br. 31; *see id.* at 1, 4, 12 (reciting 511-day average over 16 years). But most of that average is attributable to *long-term* leave

(over 30 days), which isn't at issue in this case and thus does not affect the analysis. Again, if "*all* military leave" had to be "lumped together" for comparability—no matter how the "plaintiff . . . limit[ed] his claim[s]," *contra* Br. 4–5—the defendants' concession would make no sense. The average would still be 31.4 days per year. Yet the defendants admit that there could be comparability for some of those leaves.

*Second*, in making their concession, the defendants acknowledge that a 14-day period of service, and whatever leave it entails, is comparably "short" in duration to jury-duty leave. Br. 4; *contra* Br. 28–29 (stating elsewhere that a leave longer than "three or four days . . . would not be comparable when evaluated individually"). The same is necessarily true for the other non-military leaves because their average length is similar to jury-duty leave and is well under 14 days. *See* Opening Br. 28–29. Further, less than 5% of the military leaves at issue in this case exceed 14 days. SER-154–55. This means that the defendants themselves concede that the overwhelming majority of military leaves at issue are comparable to all other types of leaves with respect to the "most significant" factor: "the duration of the leave." 20 C.F.R. § 1002.150(b).

Which leads to the *third* point: The defendants' concession removes any doubt that their comparability argument turns on frequency—a factor unmentioned in the regulation—while also showing why this reliance is mistaken. The only difference between a "short, once-a-year training" and other, equally short stints of service (like monthly drills) is that the former is by definition "infrequent," and the latter is not.

Br. 4. But neither the text of the statute nor the regulation requires imposing such a manufactured distinction as a matter of law. Comparability isn't in the statute, and frequency isn't in the regulation. And both the statute and the regulation exist to protect reservists during their "frequent absences from work." Opening Br. 13.

The defendants offer one reason for why frequency should control: because it affects "the total amount of leave" taken, which in turn affects "cost[s]." Br. 35. We will say more about this in Part III, but for now it suffices to note that this reason cannot be reconciled with the defendants' own concession. They acknowledge that up to 14 days of military leave per year could be comparable, which translates to up to 224 days over the full 16-year class period. That is 82 days more than the amount of short-term-military-leave taken per class member on average. *See* Br. 34 ("Alaska pilots who took 'short term-military leave' took an average of . . . 142 days of leave."). So if "the total amount of leave" is what matters—and we can't help but observe that the airlines' own charts (at 12–13) omit this all-important figure—the airlines cannot explain how their concession can be distinguished from the facts of this case.

**C.** There is another way in which the airlines concede this appeal. Both in the district court and this Court, Clarkson has argued that short-term military leave is comparable to vacation leave. In response, the airlines simply default. They make no effort to show that they are entitled to summary judgment on this liability theory.

That is independently fatal to their position on appeal because Clarkson need only identify a single comparator leave to establish a violation under section 4316(b).

The airlines claim (at 14 n.3) that they need not defend against this liability theory because Clarkson did not expressly mention vacation leave in his complaint and the district court "did not meaningfully address it in the comparability analysis." The complaint, however, references "comparable forms of non-military leave, *such as* jury duty leave and bereavement leave," and "comparable forms of non-military leave *like* jury duty, bereavement leave, and sick leave." 5-ER-1066–67, 1074, 1080 (emphasis added). It also asks the court to put short-term military leave on par with "jury duty, bereavement leave, sick leave, and *other forms of comparable nonmilitary leave*." 5-ER-1084 (emphasis added). As the airlines argue (at 24), "the words 'such as'" "are expressly *non*-exclusive." And the reason why Clarkson later developed evidence to support a comparison to vacation leave—and then briefed that question at summary judgment—is because *the defendants* took the position that military leave is *voluntary*, just as vacations are voluntary. With neither the district court nor the defendants mustering any argument about vacations, reversal is thus required as to all claims.

## III. Even without their concession, the airlines cannot defend the district court's analysis or establish that they are entitled to summary judgment on comparability grounds.

The defendants' own brief is all that is needed to resolve this appeal. Because they admit that at least some of the leaves at issue are comparable to at least one type

of non-military leave, the district court's grant of summary judgment must be reversed as to those military leaves. And because the logic of their concession extends to all other military leaves at issue, this Court's reversal should do the same.

But even if this Court were inclined to overlook the concession, the airlines would still be unable to defend the decision below. On duration, the airlines apply the same categorical approach as the district court, focusing solely on the average length of all military leave taken. Br. 25–26. Yet they do not even attempt to defend this approach as the correct interpretation as a matter of law, *see id.* at 29, and it is wrong for the reasons set forth in Clarkson's opening brief (at 24, 37–40). Nor do the airlines offer up any alternative view of how the analysis should work. Instead, they try to pin the district court's legal error on *Clarkson*, claiming that the problem is one of his "own making" because he tried to "gerrymander" comparability. Br. 29. But again: It is not, and he did not. It is also more than a little rich for the airlines to criticize Clarkson for "gerrymander[ing] comparability by excluding longer leaves" after criticizing him for not "limit[ing] his claim to infrequent leaves." Br. 4, 18.[1]

---

[1] We note that, although the raw statistical facts are undisputed, the weight that should be given to particular statistics and the inferences to draw from them are very much disputed. As Clarkson noted in the opening brief (at 28–29), the modal and median lengths for all relevant leaves at both airlines (except for vacation leave) are tightly clustered in the range of 1–3 days. Thus, even if a categorical approach were warranted, a reasonable jury could find that the most common duration of a leave is the best guide to whether the leave is "generally . . . of extended duration." *Waltermyer*, 804 F.2d at 825. By ignoring this possibility and addressing only their preferred metric (at 25–26), the defendants simply repeat the district court's error.

The airlines make a similar move with respect to the district court's reliance on the classwide nature of this case. 1-ER-15. Rather than explain how "the district court's approach [does not] violate the Rules Enabling Act," the airlines again try to lay the blame at Clarkson's feet, saying that it is his "gerrymander that creates the REA problem." Br. 29 n.7. As they see it, a "class obviously could not be maintained" if comparability considered "the duration of each individual military leave." Br. 30.

This is wrong twice over. Once again, Clarkson's position is that the duration analysis is unaffected by Rule 23. Class action or not, the inquiry should look to the length of the particular stretch of military leave at issue—not some broad category that includes other leaves. As for the airlines' wishful thinking that applying this inquiry will require decertification, that argument is both outside the scope of this appeal and meritless. Determining the length of each military leave is a ministerial task that does not defeat predominance and would be necessary to calculate damages in any event. It is no barrier to certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668–69 (9th Cir. 2022) (en banc). The jury will be able to determine the length of military leave that is comparable—whether three days, 30 days, or something in between—and that determination will then apply uniformly across the class.

On the purpose factor, the airlines quote a snippet from Clarkson's deposition testimony and assert that it is thus undisputed that the purpose of military service is

to pursue a "parallel career." Br. 37. But Clarkson also testified that he enlisted in the military "to serve" and remained there after joining Horizon out of a "[c]ommitment to service . . . to the nation." 2-ER-289. And the relevant question is the "purpose of the leave." 20 C.F.R. § 1002.150(b). There is ample evidence that the purpose of military leave in this case is comparable to the other leaves. *See* Opening Br. 30–32, 46. Indeed, Alaska itself admitted below that a core "purpose[] of military leave" is "allowing pilots to perform a public service." 2-ER-230–31; *see also* 3-ER-372, 376–77. It would be eminently sensible for a jury to agree. The airlines offer no rebuttal. And although they argue that this case calls for a different result than *Waltermyer* because it "involv[es] pilots," that ignores the Department of Justice's own pilot class action in *Woodall*, where DOJ explained that it would be "easy" for a jury to find that short-term military leave is comparable to other leaves given its "public purpose." Opening Br. 31. Nor do the airlines rebut Clarkson's more fundamental point: that neither the regulation's plain text nor its animating rationale "require[s] that the purpose factor separately be satisfied to allow for a finding of comparability." *Id.* at 32.

On voluntariness, the defendants argue (at 39) that "[p]ilots have 'tremendous' control over when—or even whether—they take military leave." But regardless of whether that's true as a general matter, "this case involves military leaves that were typically unknown to pilots more than a few weeks in advance." Opening Br. 49. The defendants do not contend otherwise. Nor do they deny, in any event, that pilots

have considerable flexibility over when and whether to take vacations and even sick leave, which often entails pre-scheduled appointments or procedures. *Id.* at 34.

The airlines express concern (at 40) about pilots gaming the system to "earn double pay for military service." This hypothetical future concern is unsubstantiated, overblown, and has no bearing on this appeal. The way to address any such concern, should it arise in the future, is not through an anti-military comparability analysis, but through neutral policies. For instance, if a jury finds that sick leave, bereavement leave, or vacations are comparable, the airlines could impose the same cap on paid days for short-term military leave. Or if jury-duty leave is found comparable, the airlines could cap the paid number of days for both leaves or provide only differential pay (an employee's regular pay minus the pay received from the government for their service). This, too, would help blunt any perverse incentives. Or, if all else fails, the airlines could adopt neutral policies to curb any perceived abuse. But in all events, this hypothetical concern provides no license to bar comparability outright.

At the end of the day, the defendants' real argument against comparability has nothing to do with the factors enumerated in the regulation. Their real argument, rather, is that military leave (save for the "once-a-year training," Br. 4) cannot be comparable to any other leave because of an *un*enumerated factor: frequency. But they haven't established that this factor entitles them to summary judgment.

Because frequency is unmentioned in the regulation, it is incumbent on the defendants to give some reason why it should matter. They offer just one: It matters, they say, because it affects "the total amount of leave," which matters because it affects "cost[s]." Br. 35. Thus, the defendants say that because military leave includes "many more days in the aggregate" than jury-duty leave, "providing paid military leave is substantially more costly and burdensome to operations than providing paid jury duty leave," *id.*, and that *this* is the reason why they treat the leaves differently.

But even if the defendants were right that "providing paid military leave is substantially more costly" than "providing paid jury duty leave" because it entails "many more days in the aggregate*,*" *id.*, the opposite is true for sick leave and vacations. The total amount of sick leave is more than *seven times* that of short-term military leave, while the total amount of vacation leave is more than *thirteen times* that of short-term military leave. *See* Opening Br. 28–29. The totals for sick and vacation leave dwarf even all military leave. SER-154–55. Hence, it is an undisputed fact that providing benefits to pilots on vacation or sick leave is an "order[] of magnitude" more costly than providing the same benefits to pilots on short-term military leave. *Contra* Br. 2. And yet the defendants do so anyway. Their failure to do the same for short-term military leave therefore cannot be explained by differences in "the total

amount of leave" or a purportedly non-discriminatory concern about "cost[s]." Br. 35.[2]

It is true, of course, that the total number of days taken for short-term military leave is concentrated in a smaller number of people. But that's always true of military leave, so that distinction cannot be the basis for unequal treatment. In fact, it is hard to think of a justification that would be more antithetical to USERRA than punishing servicemembers because they shoulder a disproportionate burden. As one court recently put it in rejecting the argument that frequency negates comparability as a matter of law: The "whole point of service in the armed forces is that servicemembers must be prepared to serve whenever they are called up—whether that need is occasional or frequent. Nothing in USERRA says that employers must provide equal treatment unless a servicemember serves too much." *Won v. Amazon.com, Inc.*, No. 21-2867, 2022 WL 3576738, at *11 (E.D.N.Y. Aug. 19, 2022) (quotation marks omitted).

## IV.  The defendants' "benefits" argument is not presented in this appeal, does not divest this Court of jurisdiction, and contradicts USERRA's plain text and every case interpreting it.

Rather than identify a neutral justification for their policy, the defendants look for a way to avoid having to offer any at all. They devote a dozen pages of their brief

---

[2] Ditto for bereavement leave. Because the defendants provide only a few days of paid bereavement leave per year (three days at Horizon, for example), a jury could reasonably conclude that any differences in frequency or the total amount of leave taken are immaterial.

to an argument that was not considered by the district court: that comparability can be sidestepped because the payments made to employees while on non-military leaves are not "benefits" under USERRA. Br. 20–21, 44–54; *see* 38 U.S.C. § 4303(2).

For three reasons, this argument should be rejected as a basis for affirmance.

*First*, the argument was not passed on below. Because "[t]he district court did not address this argument," this Court should follow its usual practice and "remand so that the district court can consider this issue in the first instance." *Buchanan v. Watkins & Letofsky, LLP*, 30 F.4th 874, 879 (9th Cir. 2022).

*Second*, the argument is wrong. It is the same argument that was made to the Third Circuit in *Travers* (by the airlines' same counsel). Like the airlines here (at 50), the defendant there argued that it "never provides anyone 'paid leave" generally," but "offers pay for certain *specific* kinds of time away from the job, such as 'paid sick leave' or 'paid jury-duty leave.'" *Travers*, 8 F.4th at 202. The defendant thus argued, as the airlines do, that this meant that it had complied with the equal-treatment rule.

The Third Circuit rejected this argument. Writing for a unanimous panel, Judge Matey began by noting that section 4316(b)(1) requires "a comparison of the 'rights and benefits'" provided to two groups of employees: those on leave from work for military service, and those on leave for a different reason. *Id.* "Both groups contain employees who are not at work, Group 1, for military service, Group 2, for anything else." *Id.* Judge Matey then explained that the way to "measure the rights

and benefits" that must be provided equally under section 4316(b)(1) is to ask a simple question: "[D]oes Group 2 get something that Group 1 does not?" *Id.* at 202–203. And "that thing" cannot "be the leave itself"—the "benefit to not come to work without facing adverse action"—"because the word 'other' in [section] 4316(b)(1)(B) means something distinct or different, and absence from the job is common to both employee groups." *Id.* at 203. But the benefit "could be most anything" else—"say, health insurance, a bonus, or a gym membership." *Id.* Or yes: "pay." *Id.* at 204.

The benefit under USERRA, then, is "pay while on leave." *Id.* The "label given to the leave" by the employer is irrelevant. *See id.* ("Shoehorning the label given to the leave into the definition of the benefit avoids making the actual comparison between different types of leave."). Under section 4316(b)(1), "[w]hat matters is who gets that benefit. Something the employer offers to Group 2 but denies to Group 1 becomes the comparator for a USERRA differential treatment claim." *Id.* at 203. So if Group 2 receives "payment during leave" but Group 1 does not, there is unequal treatment, and the question becomes whether the leaves are comparable. *Id.* at 205.

That is unquestionably the case here. The airlines do not deny that they "pay[] employees who take non-military leaves for jury duty, bereavement, [vacation], and health, placing employees taking leave for military service at a disadvantage." *Id.* As every case to consider the question holds, that counts as a benefit under USERRA. *See, e.g., id.* at 208 ("'[R]ights and benefits' under USERRA § 4303(2) includes pay

while on leave."); *White*, 987 F.3d at 621 ("[R]eceiving pay from one's employer is an 'advantage, profit, privilege, or gain' of employment [under section 4303(2)'s definition of benefits]."); *Won*, 2022 WL 3576738 at *5–*9 (agreeing with the Third Circuit's and Seventh Circuit's unanimous holdings in *Travers* and *White*).[3]

*Third*, the defendants' argument does not implicate any disagreement about the meaning of the collective bargaining agreement. Under USERRA, a "benefit" may be provided by "an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2). The airlines do not deny that they provide pay to employees while on the other kinds of leave, but not on military leave. So the meaning of the CBA is doubly irrelevant: The airlines' undisputed "employment policy satisfies th[e] requirement" by itself, and contractual labels do not dictate USERRA's definition of benefits anyway. *Travers*, 8 F.4th at 202–04, 207 n.20.

Nor can the airlines strip the Court of jurisdiction simply by invoking the CBA. The claims in this case arise under USERRA; they are not "grounded in the CBA."

---

[3] These cases also thoroughly explain why the defendants' other arguments, including its extra-textual arguments (at 49–53), are flawed. *See, e.g.*, *Travers*, 8 F.4th at 206–08 (rejecting the defendants' argument about section 4303(2)'s enumerated examples and explaining why there is "no conflict between USERRA and 5 U.S.C. § 6323(a)"); *White*, 987 F.3d at 622–25 (same). The plaintiffs' appellate briefing in *Travers* and *White* did the same. Should the Court be inclined to reach the issue and address the defendants' arguments, we would invite the Court to review that briefing in addition to the thoughtful and persuasive judicial opinions on the subject. *See* 2020 WL 6591259 (*Travers* opening brief); 2021 WL 346643 (*Travers* reply brief); 2020 WL 3259324 (*White* opening brief); 2020 WL 4573591 (*White* reply brief).

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994). The dispute between the parties is likewise about USERRA, not the CBA. The Railway Labor Act "does not pre-empt causes of action to enforce rights that are independent of the CBA." *Id.* Nor does it preempt claims just because they might require a "court to refer to the CBA and apply its plain or undisputed language." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921–22 (9th Cir. 2018). "[C]laims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* at 921. Here, there is no dispute that the airlines have a policy of paying pilots while on certain kinds of non-military leave, but not paying them while on military leave. The dispute is whether USERRA allows that discriminatory treatment. Because a jury could resolve that dispute in favor of Clarkson, this Court should reverse and remand for trial.

## CONCLUSION

The district court's decision should be reversed.

August 25, 2022

Respectfully submitted,

*/s/ Jonathan E. Taylor*
JONATHAN E. TAYLOR
DEEPAK GUPTA
PETER ROMER-FRIEDMAN
ROBERT FRIEDMAN
GUPTA WESSLER PLLC
2001 K Street NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741
jon@guptawessler.com
deepak@guptawessler.com
peter@guptawessler.com

*robert@guptawessler.com*

ADAM T. KLEIN
MICHAEL J. SCIMONE
OUTTEN & GOLDEN LLP
685 Third Ave., 25th Floor
New York, NY 10017
(212) 209-0671
*atk@outtengolden.com*
*mscimone@outtengolden.com*

R. JOSEPH BARTON
COLIN M. DOWNES
BLOCK & LEVITON LLP
1633 Connecticut Ave. NW, Suite 200
Washington, DC 20009
(202) 734-7046
*jbarton@blockesq.com*
*colin@blockesq.com*

VINCENT CHANG
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 968-8999
*vincent@blockesq.com*

MATTHEW Z. CROTTY
CROTTY & SON LAW FIRM PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
(509) 850-7011
*matt@crottyandson.com*

THOMAS G. JARRARD
LAW OFFICE OF THOMAS G. JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
(425) 239-7290
*tjarrard@att.net*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,307 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this reply brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2022, I electronically filed the foregoing reply brief with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Jonathan E. Taylor
Jonathan E. Taylor
*Counsel for Plaintiff-Appellant*